CASPER F. RAASCH ET AL., APPELLEES, V. LUND LAND COMPANY ET AL.: DANIEL S. ROCKWELL ET AL., APPELLANTS.

FILED FEBRUARY 1, 1919. No. 20295.

1. **Constructive Trust.** When the record title of land is obtained from a grantor by the fraud of a grantee, a constructive trust is thereby created, and such grantee becomes a trustee for the grantor.

2. **Attachment:** VALIDITY. In such case, an attachment levied on the land by a creditor of such trustee cannot be upheld.

3. **Constructive Trust:** PAROL EVIDENCE. A constructive trust is excepted from the operation of the statute of frauds, and parol testimony is admissible to prove the circumstances under which an alleged fraudulent conveyance of land was made.

4. **Fraud:** GUILTY KNOWLEDGE. It is elementary that one who knowingly and at any stage of its development participates in the commission of a fraud against another is chargeable with guilty knowledge.

5. **Quieting Title:** SUFFICIENCY OF EVIDENCE. The evidence examined *de novo*, and *held*, the judgment of the district court must be affirmed.

APPEAL from the district court for Cass county: JAMES T. BEGLEY, JUDGE. *Affirmed.*

*D. O. Dwyer, A. L. Tidd, Cook, Cook & Cook, C. A. Robbins, C. E. Tefft, H. H. Claiborne, Wayne E. Sawtell* and *A. C. Pancoast,* for appellants.

*Matthew Gering* and *Bryant & Bryant, contra.*

DEAN, J.

Plaintiff brought this suit to quiet title to 814 acres of farm land in Cass and Saunders counties. It is

charged that a conveyance was obtained from him
by the fraud of defendant Lund Land Company, its
officers and agents. Frank H. Warner, now deceased,
was an employee of the company. His estate ap-
pears as a defendant and cross-petitioner claiming title
by virtue of an alleged conveyance from Raasch. Six
attaching creditors of defendant Oscar Lund and of
the company filed answers and cross-petitions and
sought to have the land subjected to the payment of
their respective claims, aggregating about $35,000, on
the alleged ground that the company or Lund, its
president, either owned or had some attachable interest
in the land. Plaintiff obtained judgment quieting title
in himself, and the suits of all cross-petitioners were
dismissed. The attaching creditors and the estate of
Warner appealed. The judgment must be affirmed.

Casper Raasch is a farmer advanced in years. Prior
to forming the acquaintance of the land company and
its agents, he never had any active business experience.
H. F. Levenick was an agent, a stranger to Raasch, who
called at his farm home near Ashland, where he re-
mained about two days, and while there succeeded in in-
teresting him in a tract of 2,580 acres of North Dakota
land that the company was offering for sale or exchange.
Before Levenick went away, Raasch agreed to meet him
at Sioux City in a few days and go with him to ex-
amine the land.

In less than a week Levenick and Raasch together
arrived at Valley City, North Dakota, where plaintiff
was introduced by Levenick that evening to Mr. Lund,
another stranger. The three spent the evening to-
gether, and the next morning, October 14, 1915, Leve-
nick and Lund took plaintiff out about three miles in a
car to inspect the land, returning that evening. The
following morning Herbert Weston was introduced to
Raasch by Mr. Lund as a prospective purchaser of
land adjoining the 2,580-acre tract that was visited
by Raasch the day before. Naturally Mr. Weston

wanted to examine the land before buying, and to the suggestion that plaintiff again accompany his two companions of the day before, and Mr. Weston, to the land, he readily assented.

On return of the party of four to the company's office that evening, Weston executed a contract for the purchase of 640 acres at $65 an acre, giving his check to the company for $1,000 as a first payment. Raasch immediately thereafter signed a contract of exchange agreeing to convey his 814 acres of Nebraska land to the company, subject to a mortgage of $28,500, in exchange for a deed to the 2,580-acre tract at $65 an acre; the difference in value of the respective tracts was to be met by plaintiff turning over to the company one-half of the crops raised on the 2,580-acre tract each year until payment was made in full.

When the exchange contract was executed, and as a part of the same transaction, another contract was entered into wherein the company agreed to sell 960 acres of the North Dakota land for plaintiff at $65 an acre within one year, or, failing to do so, the company was to purchase the 960-acre tract at $65 an acre.

The same evening a contract of employment was entered into under which Raasch was employed at $1,500 a year as an agent of the company beginning April 1, 1916. The employment contract provides, among other things, that Raasch should "move his family to Valley City, * * * work from the office of the Lund Land Company, * * * travel in search of land buyers, take care of stocks of goods, inspect properties," and that he should do "any work that is honorable and necessary in connection with the general land business." Comment may be spared respecting this contract, other than to say that the feature providing that Raasch should "travel" is not without significance. The contracts being executed, Raasch left Valley City at midnight for his Nebraska home.

As an inducement to execute the agreement of exchange the company represented to Raasch that, with the exception of a comparatively small final payment yet to be made to the vendor, the company owned the North Dakota land free of incumbrance, when in fact neither the company nor any of its officers or agents had any title or interest either legal or equitable in any portion of it, George O. Goulet being the owner. This of course was studiously concealed from Raasch. Plaintiff testified that he relied upon all the fraudulent representations respecting the trade and ownership made by defendants, believing them to be true, and that in reliance thereon the agreement for the exchange of lands was executed by him.

Herbert Weston was not a party defendant, but he was an interesting witness whose evidence is uncontradicted. He testified that Frank H. Warner, then an agent and employee of the company, and whose estate is a cross-petitioner, drove out to his place, about 20 miles from Valley City, to see him one or two days before plaintiff contracted with the company. He said that Warner told him the company had a big deal on; that a prospective customer would be in Valley City shortly; that, ''if I would come in and help them to put it through, there was a thousand dollars in it for me;'' that he returned with Warner to Valley City, and on arrival there Lund confirmed Warner's statement; that Lund engaged him to go through the form of examining and purchasing a tract of 640 acres at $65 an acre, that was worth about $30, and that adjoined the 2,580-acre tract, to the end of course that Raasch, the prospective customer whose presence had already been arranged for, might be stimulated and encouraged to close a trade with the company.

Weston testified: ''I done it for $1,000 and I never got it either. * * * Q. Was this contract, in which you agreed to pay $65 an acre for land which was not worth to exceed $30, signed in Raasch's presence and

shown to him? A. Yes; that is what I was getting my thousand dollars for.'' Such was the inception of the fraudulent arrangement, in which Warner knowingly participated, that preceded the pretended negotiations between Weston and the company. Every fraudulent detail of the deception was impressively staged as a good faith transaction in the presence of the unsuspecting plaintiff. Three days after Raasch went home the Weston check and the contract, having served their purpose, were both destroyed.

As a part of its scheme the company induced Raasch and his wife, on March 30, 1916, to execute a conveyance of their land to its employee, Warner, without any consideration therefor. This was done, as represented by the company to Raasch, merely as a convenience in procuring a loan; Warner representing himself to be a single man and a correspondent of a loan company in Iowa. It transpired, however, that Warner had a wife and 5 adult children living in Minneapolis at the time. It was explained to Raasch that out of the money so to be obtained the $28,500 mortgage on his Nebraska land would be paid off and the remainder would be paid to Goulet on the North Dakota land. The Nebraska land was inspected by John F. Webber and the loan was made by him.

He tesified that Raasch and Warner came together to his office at Ottumwa, Iowa, to procure the $35,000 loan, and that the arrangements for the loan to be made in Warner's name were made by Raasch. Webber made out a check for $5,000 payable to Warner and mailed it to the land company at Valley City, where it was cashed by the company. No additional money was ever advanced by Webber on the $35,000 mortgage. The court established Webber's mortgage lien of $5,000 on plaintiff's land.

The finding of the district court that on April 22, 1916, Warner executed and delivered to Lund a deed in blank as to grantee is supported by the evidence.

103 Neb.—11

Afterwards Lund caused the name of H. C. Aamoth, a North Dakota agent of the company, to be inserted as grantee, with the understanding that Aamoth, as he testified, was to reconvey to Raasch if the company failed to make the title good to the Goulet land. It was while the record title stood in the name of Aamoth that the attachments were levied.

Error cannot be predicated on the court's refusal to continue the case to permit Warner's adult children to be made parties and to procure evidence. Counsel says that, if the continuance had been granted, the estate would have shown that Warner exchanged certain property for the equity that the company or Lund had in the Raasch land. No offer of such proof was made. Warner's procurement of Weston to act the part of a pretended buyer charged him, not only with guilty knowledge but of active participation in the fraud. In view of the fraud of the ancestor, can the estate now assume the attitude of an innocent purchaser? It is elementary that one who with knowledge of the fraudulent transaction knowingly participates in it at any stage of its development is chargeable with guilty knowledge.

About four months after the date of the exchange agreement, namely on February 16, 1916, the company contracted with Goulet for the purchase of the same 2,580-acre tract at $40 an acre that it had made a pretence of agreeing to exchange with plaintiff at $65 an acre. The $5,000 obtained from Webber on plaintiff's land was paid over by the company to Goulet as a payment on their contract with him which, with an additional payment of $6,000 at some time made by the company, constituted all of the payments that were ever made to Goulet. The Goulet contract with the company was subsequently forfeited for nonpayment.

Raasch, as an employee of the company, moved to Valley City in March, 1916, and lived in town. While there he furnished seed wheat to the value of about

$2,100 and paid for some improvements placed on the Goulet land by the company's tenants that cost him about $400. These expenditures were incurred in reliance on the representations of the land company that the title to the Goulet land would shortly be perfected and the tract conveyed to him pursuant to agreement. The wheat was not yet harvested when the Goulet contract with the company was forfeited.

Plaintiff did not live on nor have possession of the North Dakota land, nor did he ever receive any rent share, nor did he recover any of his expenditures nor any part of the Webber $5,000 mortgage lien that was placed on his Nebraska land. All of this outlay and the mortgage lien was apparently a part of the fraudulent scheme that was devised by the company. The Nebraska tract of land was rented by Raasch to five tenants with whom separate lease contracts were made, and with one exception the leases were taken by Raasch in his own name as lessor. In one lease at Lund's request he inserted the name of the land company, and this too seems to have been one of the fraudulent devices of the company. Except to the tenants Raasch did not part with the possession of any part of the Nebraska land.

Defendants charge that plaintiff waived the fraud and is therefore bound by his contract. But he cannot be charged with a waiver because he did not discover the fraud until sometime in September, 1916, and on October 3, 1916, or as soon as it could reasonably be done, he began this action. During the time that the record title stood in the name of Warner and Aamoth as grantees, the land was, by operation of law, held in trust for Raasch. The record title to the land held by the respective grantees was obtained by fraud, hence a constructive trust was created with Raasch as beneficiary. *Pollard v. McKenney,* 69 Neb. 742; 1 Perry, Trusts (6th ed.) sec. 166. Such a trust is excepted

from the operation of the statute of frauds. Section 2624, Rev. St. 1913. ·

Plaintiff's land having been held in trust by Warner and Aamoth as agents of the land company, the respective attachments of the creditors of Lund and the company cannot be upheld, because neither the company nor Lund ever had any title or claim either legal or equitable to the land. *Chicago, B. & Q. R. Co. v. First Nat. Bank,* 58 Neb. 548. The case before us must be distinguished from one where a person by his own indiscreet act creates a condition wherein either himself or an innocent purchaser must suffer loss. The question of innocent purchaser is not involved here. "The private creditors of the trustee have no claim on trust property where the trust has been created by or the fund has proceeded from some person other than the debtor, and their attachment of it will not hold, though the title stands in the name of the trustee as an individual, and the creditor has no notice of the trust." 2 Perry, Trusts (6th ed.) sec. 815*b*.

This is an equitable action, and as such we have tried it *de novo* and have reached the same conclusion as that arrived at by the district court. Finding no reversible error, the judgment is

AFFIRMED.

LETTON, J., not sitting.

SEDGWICK, J. The levy of an attachment or execution creates a lien only on the title or interest of the judgment or attachment debtor. I therefore concur in this conclusion.