CASPER F. RAASCH, Appellant, v. GEORGE O. GOULET,
Respondent.

(223 N. W. 808.)

Opinion filed February 28, 1929.

*Lemke & Weaver,* for appellant.

676

*Combs, Ritchie, & Hanchett,* for respondent.

McKenna, District J. Two different phases of this controversy have previously been before this court for adjudication. See Raasch v. Goulet, 49 N. D. 936, 194 N. W. 380, and Raasch v. Goulet, 52 N. D. 707, 204 N. W. 338.

Following are the principal facts:

On October 15, 1915, the plaintiff, Casper F. Raasch, of Ashland,

Nebraska, was the owner of a tract of land known as the Christian Ranch, comprising 814 acres, situate in Saunders and Cass counties, Nebraska, and encumbered for $28,500. On this date he entered into a preliminary agreement with the Lund Land Company, a corporation, of Valley City, N. D., by which Raasch agreed to sell and convey to the Lund Land Company these 814 acres at the agreed price of $145 per acre, or a total consideration of $118,030, which sum less the encumbrance of $28,500, made a net cost to the Land Company of $89,530. The Lund Land Company agreed that if after examination of the plaintiff's Nebraska ranch it decided to accept the property, it would convey to Raasch 2580 acres of land in Barnes county, N. D., at the agreed price of $65 per acre, or a total consideration of $167,700, which amount less Raasch's equity in the Nebraska land of $89,530 and the sum of $70 allowed Raasch for expenses, left a balance due and owing from Raasch on the property thus to be exchanged of $78,100, which he agreed to pay by turning in one-half of the crops raised on the Barnes county land each year; this sum to draw interest at 6% from March 1, 1916.

On the said 15th day of October, 1915, a supplemental agreement was entered into between C. F. Raasch and the Lund Land Company, by which the Lund Land Company agreed to dispose of one and one-half sections of the Barnes county land for a sum equal to the amount paid for same by Raasch, and it agreed to sell the land on or before one year from date and to make full and complete settlement for same on or before March 1, 1917, and covenanted that if it failed to dispose of the land within the time mentioned the company would itself purchase the land at said price, and would pay Raasch for his equity in said land in cash and assume all indebtedness against said lands.

The same evening a contract of employment was entered into, under which Raasch was employed by the Lund Land Company at a salary of $1,500 a year, as an agent of the company, commencing April 1, 1916. The employment contract provided that Raasch should move his family to Valley City and work from the office of the Lund Land Company in search of land buyers, etc.

On the date of these contracts, the Lund Land Company was not the owner of the Barnes county land, and had no interest in the same whatever, and did not even have it listed for sale, but it was at that time the

sole property of the defendant, George O. Goulet, and he had not in any manner authorized the Lund Land Company to act for him in negotiating a sale or trade for those lands.

On February 16, 1916, the defendant, George O. Goulet, of Oriska, in Barnes county, N. D., entered into a contract with the Lund Land Company, agreeing to convey 3220.41 acres of land in Barnes county, which included the 2580 acres the Lund Land Company had agreed to exchange with Casper F. Raasch on the 15th day of October, 1915. The consideration for the transfer was $120,765, upon the following terms: $2,000 in cash at the time of the contract; $1,000 on February 24, 1916; $5,000 March 10, 1916; $12,765 on April 1, 1916; and the balance of $100,000, at 6% interest, to be paid by delivery of one half of the crops each year. Such contract provided that same might be cancelled upon thirty days' notice in case of failure to make the payments covenanted, and that no assignment of the contract or the premises should be valid without the written consent of the vendor.

On March 1, 1916, Casper F. Raasch moved to Valley City, N. D., and entered the employ of the Lund Land Company as a salesman and solicitor at a salary of $1,500 a year.

On March 30, 1916, Raasch and his wife executed a conveyance of their Nebraska land to one Warner, an employee of the Lund Land Company. This was done, as represented by the company to Raasch, merely as a convenience in procuring a loan. Warner, with the consent of Raasch, mortgaged the Nebraska land to one John W. Webber, of Ottumwa, Iowa, to secure a loan of $35,000. It was explained to Raasch that out of the money so to be obtained the $28,500 mortgage on his Nebraska land would be paid off and the remainder would be paid to Goulet on the North Dakota land. Webber, however, only advanced $5,000 upon this mortgage, and no additional sum was ever advanced by him.

On March 31, 1916, Raasch and the Lund Land Company made a new contract covering the transaction of exchange of lands between them, and embodying the same terms contained in the preliminary agreement of October 15, 1915. Raasch's only explanation for making this new agreement is that the company asked him to, and he simply signed the new contract.

On this same date, March 31, 1916, the Lund Land Company secured

from Geo. O. Goulet an agreement extending the time for the payment of the sum of $12,675, which was due April 1, 1916, to the 15th of April, 1916. The Lund Land Company at this time had paid Goulet, in addition to the $2,000 cash payment on February 16, 1916, the further sums of $1,500 on March 14, 1916, and $4,500 on March 31, 1916.

Sometime in April, 1916, Casper F. Raasch and Geo. O. Goulet met in the office of the Lund Land Company at Valley City, N. D., and Raasch was introduced to Goulet as the new owner of the farm which Goulet had agreed to convey to the Lund Land Company. At that time Goulet took Raasch out to the farm, showed him around the place, told him that a certain scale did not go with the farm, tried to sell him a tractor, and at that time Raasch purchased from Goulet some $2,000 worth of seed for seeding the land in 1916, and paid for the same.

The lands were leased in 1916 to some four tenants. The leases were all made by the Lund Land Company, with the knowledge and consent of Raasch, and, under an agreement with the company, Raasch procured tenants on the Nebraska farm in the year 1916.

On May 18, 1916, a further extension agreement was entered into between Goulet and the Lund Land Company, whereby, the Lund Land Company having paid the additional sum on the contract of $3,003.63, and having further covenanted and agreed to pay the sum of $2,500 as a consideration for the extension, it was agreed that the time for making the balance of the cash payment under the contract should be extended to July 15, 1916.

Thus at this time the Land Company had paid upon the contract the total sum of $11,003.63, leaving unpaid the sum of $10,000, and this amount, together with the $2,500 agreed to be paid for the extension, was to be paid on July 15, 1916.

On May 25, 1916, a cyclone injured a cow barn and dwelling on the Barnes county land, and the loss was adjusted at the sum of $200 by the Barnes County Farmers Mutual Insurance Company. While there is some dispute in the testimony as to whether Goulet had notified Raasch prior to this time that he was the title owner of the Barnes county land, that he had merely sold the land to the Lund Land Company on contract and that they were in default in their payments, there can be no question that at the time of the cyclone Goulet informed

Raasch that he was the title owner of the land and demanded that the sum to be paid for such loss by the Insurance Company should go to him, and on August 1, 1916, the insurance loss was paid directly to Goulet.

On July 17, 1916, the Lund Land Company having been unable to meet its payments to Goulet, he caused notice of cancellation of contract to be issued, and this notice was served upon the Land Company by the sheriff of Barnes county on the 18th day of July, 1916. The notice provided that unless the sum of $12,500, with interest at 6% from May 18, 1916, was paid within thirty days from the date of service, the contract would be cancelled and terminated. No service of this notice was made upon Raasch.

In the summer of 1916 summer fallowing was done upon the Barnes county land by demand of Goulet. A portion of the expense for such summer fallowing was paid by the Lund Land Company and taken out of Raasch's salary. The balance was paid by Goulet himself.

In the fall of 1916, the Lund Land Company having failed to make the payments due to Goulet, and the cancellation of the contract having been effected, so far at least as the Land Company was concerned, Goulet went into possession of the premises and took charge of the crop. The crop was poor that year, hardly sufficient to pay expenses, but the division of the crop with the tenants was made by Goulet and the expenses paid by him. Raasch paid no attention to the land after the crop was cut in 1916, never paid any of the expenses in connection with the 1916 crop, or looked after the fall plowing, nor did he receive any of the proceeds of the 1916 crop. He never made any arrangements for leasing the land in 1917, has never paid any taxes upon the land, or had anything to do with it since the summer of 1916.

We are satisfied from the testimony that at least in the fall of 1916, and prior to the 2nd day of October, Raasch realized that he had been defrauded by the Lund Land Company. He knew at that time that the Lund Land Company had no title to the Barnes county land, that it merely at one time held a contract from Goulet, and he knew that this contract was cancelled. On October 2, 1916, he commenced an action in the district court of Cass county, Nebraska, against the Lund Land Company, a corporation, Oscar Lund, Frank H. Warner, H. C. Aamoth, and others, to quiet title to his 814-acre farm in Nebraska; alleging that title to same had been fraudulently obtained from him,

that these lands were held in trust, that the Lund Land Company did not at any time own or possess the Barnes county land; and he prayed that the title to the Nebraska lands be quieted in him, that the deeds to Frank H. Warner and H. C. Aamoth might be declared null and void, that the rents and profits of said land be declared to belong to him, and for such other and further relief as the court might deem just and equitable. This action was tried in the district court of Cass county, Nebraska, and resulted in a judgment in favor of the plaintiff on April 16, 1917. The case was appealed to the supreme court of the state of Nebraska, and the decision of the lower court was affirmed. See Raasch v. Lund Land Co. (Feb. 1, 1919) 103 Neb. 157, 170 N. W. 836. The decree of the Nebraska court provided that the defendant John F. Webber was entitled to a lien upon the Nebraska lands for the sum of $5,000 with interest from May 10, 1916, at 5½% per annum, and that the other defendants had no interest in the lands. It was further ordered that the defendant H. C. Aamoth make and execute a quit claim deed to the plaintiff Casper F. Raasch for all of the lands above described within twenty days from the date of the decree, and upon failure to do so the title to all of the lands should be confirmed in the said Casper F. Raasch; that all of the other liens and mortgages upon said lands be declared null and void; and that plaintiff have immediate possession of the premises.

On June 20, 1918, an action was commenced by Casper F. Raasch in the United States district court at Fargo against the Lund Land Company, Oscar Lund, H. C. Aamoth, James Grady, and The American Loan & Investment Company, by which he sought to recover damages from the defendants growing out of the exchange of the Nebraska and Barnes county lands on the ground of fraud. In said action he claimed the following sums in damages: $37,000 and interest at 6 per cent from April 18, 1916, because of two mortgages placed on the Nebraska land by the defendants to John F. Webber; $2,098 for seed purchased and furnished for the Barnes county land in 1916; $16,000, the value of a large house alleged to have been burned on the Nebraska land; $3,168, the loss for the use of the Nebraska land for one season; $5,000 for expenses, and time, loss on property sold, etc.; $3,000 for labor and improvements on the Barnes county land; $2,500, expense in prosecuting the Nebraska suit, attorney fees, etc. This case was tried in the

United States district court at Fargo, and resulted in a verdict and judgment in favor of the plaintiff and against the defendants Lund Land Company and Oscar Lund in the sum of $12,610.75.

On April 24, 1921, Raasch commenced a suit in the district court of Barnes county against the defendant, George O. Goulet, to recover the sum of $5,000, the proceeds of the mortgage received by the Lund Land Company from the mortgage executed to John F. Webber, of Ottumwa, Iowa, upon the ground that the moneys were procured by fraud, and that Goulet was a party to this fraud and that Goulet had received the sum of $5,000 from the plaintiff without any consideration therefor. This action was later dismissed by the plaintiff.

Subsequently Raasch commenced another suit in the district court of Barnes county against Goulet to recover the sum of $2,098 for seed which he purchased from Goulet in the spring of 1916 for the Barnes county land. The case was dismissed in the lower court, on the ground that the plaintiff had not established a cause of action. Plaintiff then appealed to this court, and the judgment was affirmed. See Raasch v. Goulet, 49 N. D. 936, 194 N. W. 380.

A further action was commenced by Raasch against Goulet in the district court of Barnes county, in conversion, to recover for the conversion of fifty tons of hay and the crops produced upon the Barnes county lands in the year 1916 from the seed for which Raasch had paid Goulet the sum of $2,098. The case was dismissed by the trial court at the close of the plaintiff's case, and an appeal was taken. This court held there was no conversion so far as the crops were concerned, but that there might have been a conversion of the hay, and upon this question the case sent back to the lower court for trial, where a jury returned a verdict in favor of the defendant and a judgment of dismissal with prejudice was entered, from which Raasch took no appeal. Raasch v. Goulet, 52 N. D. 707, 204 N. W. 338.

Since the year 1916, and prior to the commencement of the present suit, the defendant, George O. Goulet, sold all of the Barnes county land, and has no interest therein except that he still holds a sheriff's certificate of foreclosure on section 35–141–56 and the west half of section 5–140–56.

The plaintiff, Raasch, has never made any payments upon the Lund Land Company contract with Goulet, nor has he ever tendered any such

payments, except as he tendered them in his pleadings, and in fact he admits that he has never been financially situated so that he could make any of such payments.

It is somewhat difficult to ascertain exactly upon what theory plaintiff and his counsel have proceeded in the present action. The original complaint upon which this action was tried states it is an action to determine adverse claims to the 2,580 acres of Barnes county land, and asks for damages for the reasonable use and occupation of said lands alleged to have been wrongfully withheld by Goulet since 1916. The average value for such use and occupation being alleged to be $5 per acre per year, or a total sum of $116,100, also damages for waste by not keeping the buildings in repair, and permitting the land to grow up to foul seed, such damages aggregating $10,000, and further alleges that the defendant has transferred a part of said property and has caused clouds to be put upon the title of a portion of said lands with intent to defraud the plaintiff, and that because of said transfers and clouds upon the title plaintiff seeks damages in the sum of $50,000.

Defendant's amended answer to this complaint denies that the plaintiff has any estate or interest in the lands; alleges that certain of the lands were purchased from the board of university and school lands of the state of North Dakota, and that the same long before the commencement of this action had been cancelled by the vendor; that all of the other lands were sold and conveyed long prior to the commencement of the action to third parties; that the defendant has no interest in any of said lands, except a certain interest by way of sheriff's certificate. Defendant denies that he withheld the use and occupation of the premises from the plaintiff, or that the plaintiff has sustained any damage by reason thereof; alleges as a separate defense that more than six years have elapsed since the accrual of plaintiff's cause of action, if any, and specifically pleads the statute of limitations as a bar; denies that the plaintiff has been damaged in the sum of $10,000 by reason of any waste committed on the premises; denies that he has transferred or encumbered the property with intent to defraud the plaintiff, and denies that the plaintiff has been damaged to the extent of $50,000 by reason of such transfers or any clouds placed upon the title. Defendant further alleges that if the plaintiff had any estate or interest in the premises by reason of any agreements for purchase between himself and the Lund

Land Company, that said agreements were terminated and cancelled; that plaintiff instituted a suit against the Lund Land Company, and others, for the rescission of said agreements, and that said action was tried and determined in favor of the plaintiff, and that plaintiff has fully rescinded such contracts. Defendant further alleges that if the plaintiff had any estate or interest in the premises, that plaintiff abandoned the same in the year 1916, and has ever since that time failed and refused to pay any taxes, furnish any seed, arrange for renting the premises, or taking any other steps in connection therewith; and defendant prays that plaintiff's cause of action may be dismissed.

To this answer of the defendant the plaintiff interposed a reply, in which he alleges that on the 31st of March, 1916, the defendant, Goulet, was the owner of the 2,580 acres of land in Barnes county, and that on said date the defendant, Goulet, through the Lund Land Company sold to the plaintiff, Raasch, all of said lands for a consideration of $167,700; that at said time the plaintiff paid to the defendant, through the Lund Land Company, $89,600 upon said lands, leaving a balance due and unpaid of $78,100, to be paid by delivering one half of all the grain to be sown and grown on said premises, beginning with the year 1916, as appears more fully from the contract attached as an exhibit. The plaintiff further alleges that the defendant thereupon delivered possession of the premises to the plaintiff under said contract and that plaintiff took possession as owner under said contract, and occupied and farmed the same and secured tenants and leased the lands to them on shares; that he purchased $2,000 worth of seed from the defendant and paid for same, and that said wheat was sown on said lands, together with other grains, consisting of oats and barley, by said tenants; that said wheat, oats and barley were cultivated, harvested and threshed by the plaintiff and left on the premises, and that the plaintiff was the owner and entitled to possession of one half of said crops, and that the reasonable value thereof was $17,500. Plaintiff further alleges that on or about the first day of October, 1916, the defendant fraudulently, unlawfully and wrongfully took possession of the premises and dispossessed the plaintiff and sold the plaintiff's half of the crop and refused to apply the proceeds on the purchase price and refused to account to the plaintiff. The plaintiff further alleges that the defendant has ever since the first day of October, 1916, fraudulently, unlawfully and wrongfully

deprived the plaintiff of the use and occupation of said premises, and has himself occupied the same and farmed and cropped the same, and has sold and disposed of all the crops grown thereon, and has refused to apply the proceeds on the purchase price of the premises in accordance with the terms of the contract, and has refused in any manner to account to the plaintiff for the proceeds of such crops; that the reasonable value of the crops grown thereon by the defendant during such years and appropriated to his own use was the sum of $160,000; that the proceeds of said crops were more than sufficient to pay the defendant the entire purchase price due under said contract for deed; that the defendant still refuses to execute and deliver a warranty deed of the premises to the plaintiff, and refuses to account to the plaintiff for the proceeds of said crops. Plaintiff further alleges that he has fully performed all the conditions of the contract for deed on his part, and is willing and ready to pay the balance of the purchase price, if any is due the defendant after he has applied the proceeds of the aforesaid crops in accordance with the provisions of the contract; and plaintiff demands judgment as prayed for in his complaint, and further asks that the defendant perform the agreements under said contract for deed and execute and deliver to the plaintiff a warranty deed of the premises.

Upon these pleadings the case was tried. A motion was made by the defendant to strike the reply, which motion was denied by the lower court.

It would seem from the pleadings and brief of the plaintiff that he is seeking in the first instance specific performance of the Goulet-Lund Land Company contract, and an accounting from Goulet touching all crops, taxes, expenses, etc., from 1916 to 1926, and offering to pay any balance found to be due. That if such relief cannot be granted because Goulet has alienated the lands, that he should be entitled to recover as damages the following items:

Amount paid upon contract ......................... $11,103.63
For seed purchased in the spring of 1916 from the defend-
    ant by the plaintiff and sown upon the land ........ 2,000.00
For seed purchased from one Cody, and also sown upon this
    land ..................................... 98.20
For the reasonable value of one-half of the 1916 crop ap-
    propriated by defendant the sum of .............. 4,470.00

           Total ............ $17,671.83

It is apparent that the only claim which the plaintiff, Raasch, ever made to the Goulet lands was through and by reason of his contract of purchase of the 2580 acres made with the Lund Land Company, and that aside from the interest in these lands which such contract gave him he had no further rights or equities in the premises.

This court held in Raasch v. Goulet, 52 N. D. 707, 204 N. W. 338, that inasmuch as the defendant, George O. Goulet, in the spring and summer of 1916 knew that the plaintiff, Casper F. Raasch, had purchased these lands through the Lund Land Company, which Goulet himself had sold under contract for deed to the Lund Land Company in February, 1916, that it was incumbent upon Goulet to serve notice of cancellation upon Raasch if he desired to terminate the rights which Raasch had acquired as a vendee from the Lund Land Company. In that case this court said:

"Inasmuch as such notice was not served, the contract between the defendant, Goulet, and the Lund Land Company was not canceled so far as concerns the rights of the plaintiff as an assignee or vendee of the Land Company. Williams v. Corey, 21 N. D. 509, 131 N. W. 457, Ann. Cas. 1913B, 731; 39 Cyc. pp. 1670, 1680. Hence, at the time the 1916 crop was harvested and threshed, the situation was this, the defendant, Goulet, had not terminated the rights of the plaintiff, Raasch, as an assignee or vendee of the Lund Land Company. His (Raasch's) rights were unaffected by the cancellation notice served upon the Lund Land Company, and he was entitled to perform that contract, as assignee of the Lund Land Company, so as to protect the rights he had acquired by virtue of the purchase contract he held from the Lund Land Company."

The plaintiff, therefore, claims in the instant case that Raasch was at all times since the year 1916 an equitable assignee or vendee of the contract entered into between Goulet and the Lund Land Company on the 16th of February, 1916. That the attempted cancellation made by Goulet as against the Lund Land Company did not affect the rights of Raasch, and that he had a right to perform such contract. That this contract remained in force at all times so far as Raasch is concerned, or at least until Goulet made it impossible to perform by selling and transferring the lands. That Goulet breached the contract by dispossessing Raasch and excluding him from the lands in the fall of 1916 and taking the crops, and that this breach of the contract made it unnecessary for Raasch to offer to perform before he, Raasch, could recover back the moneys which he had paid upon the contract. That the sale of the lands by Goulet constituted another breach of the contract. That until the contract had been legally terminated by Goulet, or terminated in fact, that the statute of limitations would not commence to run until such termination, and that therefore Raasch had six years from such termination to maintain an action for moneys had and received by Goulet on the contract. That Goulet, having sold the land and having taken possession of it and ousted the plaintiff in 1916, will not be permitted to say that plaintiff has abandoned the premises. That a person cannot abandon land from which he has been forcibly removed. That Goulet having himself rescinded the contract cannot accuse plaintiff of rescission. And that a court of equity having acquired jurisdiction over the subject-matter of a controversy will retain it and do complete justice between the parties.

The defendant asserts that if this is an action for specific performance, that the plaintiff's rights must be measured by the terms of the Goulet-Lund Land Company contract, and not by the terms of the Lund Land Company and Casper F. Raasch contract, and that the plaintiff has failed to show performance on his part or any offer of performance, and therefore, though in a court of equity seeking equity, he has not shown equity. Further, that his laches and nonactions over a period of nearly ten years after the alleged cause of action arose, with no extenuating circumstances, is also a bar to his obtaining equitable relief. Further; that he has abandoned the contract, and in addition has rescinded the contract, and that all his rights as assignee of the Lund

Land Company are extinguished. That the plaintiff cannot recover any part of the purchase price claimed to be paid by him to the Lund Land Company, because the evidence fails absolutely to show that any money that Raasch parted with came into the hands of Goulet, and that there is no evidence to show, either directly or by implication, that Goulet employed the Lund Land Company as his agent in their dealings with the plaintiff. That if it is the plaintiff's theory that this is an action to recover for the appropriation of the crop grown upon the land in 1916, then it is purely an action of conversion and not an equity action, and he must fail, because that action was tried and judicially determinded by this court in Raasch v. Goulet, 49 N. D. 936, 194 N. W. 380, and that determination is an absolute bar to this action. That even if that decision is not res. judicata, that there is absolutely no proof of ownership or right of possession of the crop in the plaintiff, which is the first requisite in an action for conversion, and that there is no competent evidence to sustain the finding of any ascertainable damage on that score. And further, that the statute of limitations against the recovery of the value of the crop for 1916 is an absolute bar.

In the fall of 1916 the plaintiff, Raasch, was living at Valley City. He was in the employ of the Lund Land Company. He was acquainted with Goulet, and with the lands in controversy. He knew at that time that the Lund Land Company had no title to the Barnes county lands, except under a contract for purchase from Goulet. He realized fully at that time that he had been defrauded and swindled by the Lund Land Company. He knew that the contract for deed from Goulet to the Lund Land Company had been cancelled, and that Goulet had gone into possession of the lands and had taken charge of the 1916 crop. His only right or interest in these lands was by virtue of the fact that he was an equitable assignee or vendee of the contract between George O. Goulet and the Lund Land Company, dated February 16, 1916, and his only rights under that contract were the rights which the Lund Land Company themselves had by virtue of the terms of the contract. Raasch's rights and obligations were governed and fixed by the contract between the Lund Land Company and Goulet. His right at that time was the right to specifically enforce the contract between the Lund Land Company and Goulet, meet the obligations which the company was required to meet under the contract, and fall heir to all its advantages.

For convenience in illustration, let us presume that the defendant was still in possession and had not transferred or alienated any of those lands, and that the plaintiff, Raasch, in the present suit was seeking to enforce specific performance of the Lund Land Company contract. Would this court be justified in granting him such relief? We do not think so.

A person seeking in a court of equity the remedy of specific performance must show that he himself, in good faith, has at all times been ready, willing and able to comply with the terms of the contract, and that he has not been in any manner in default. Nelson v. McCue, 37 N. D. 183, 163 N. W. 724; Rev. Code 1913, § 7199.

What does the evidence disclose as to the conduct of the plaintiff, Raasch, in connection with the Goulet-Lund Land Company contract? In 1916 he permitted Goulet to enter into possession of the lands and remove the crops without protest. He permitted him to remain in possession for many years, and permitted the sale and transfer of the lands without objection. He never intimated to Goulet that he was claiming any rights under the Lund Land Company contract. He never tendered any payments thereunder or offered to perform any of the conditions of said contract, and for a period of ten years, and up until the time this lawsuit was started, he never in any way took any interest in these lands, never paid any taxes upon them, never paid any interest on the contract, never looked after the leasing of the lands, never even visited them, and to all apparent purposes had entirely relinquished any interest that he might have had therein.

We quote from the opinion of this court in Mahon v. Leech, 11 N. D. 181, 90 N. W. 807:

"That the mutual rights and obligations of the parties to a written contract for the purchase and sale of real estate may be waived, and the contract annulled and extinguished, by parol, is well settled. It is also well settled that where a party has been grossly negligent of his rights, or has abandoned his contract, a court of equity will not extend to him the extraordinary relief afforded by specific performance. The rule as stated in Huffman v. Hummer, 18 N. J. Eq. 83, 2 Mor. Min. Rep. 242, is as follows: 'Where the complainant has by parol waived or discharged a contract, and the defendant by such action has entered into obligations inconsistent with its performance, it is an equity that will

bar the remedy of specific performance.' The cases are numerous where this wholesome and equitable rule has been recognized and applied King v. Morford, 1 N. J. Eq. 274; Ryno v. Darby, 20 N. J. Eq. 231. In Dearborn v. Cross, 7 Cow. 48, it was held that *a court of law should, and a court of equity undoubtedly would, presume a rescission of a written contract for the sale of land from the fact of a surrender of possession by the vendee, and an acceptance of it by the vendor, and a subsequent sale by the vendor,* as against either party who should attempt to enforce the contract. . . . The foregoing authorities wholly sustain the doctrine that a written contract may be discharged by parol, and that a court of equity will not decree specific performance in cases coming within the rule stated in Huffman v. Hummor, supra. In Stoutonburgh v. Tompkins, 9 N. J. Eq. 332, it was held that 'one who has been in the enjoyment of property under an agreement, and has surrendered and abandoned it, who has betrayed the confidence existing between the parties, and has by his conduct and dealings with the defendant, and his treatment of the property, beguiled the defendant into the belief that he intended to give up all his rights and interest in the contract, comes into a court of equity wholly void of equity.' . . . The following rule, formulated by Mr. Justice Story in Taylor v. Longworth, 14 Pet. 172, 10 L. ed. 405, has been received by the courts with universal approval: 'If the party seeking a specific performance has been guilty of gross laches, or has been inexcusably negligent in performing the contract on his part, or if there has in the intermediate period been a material change of circumstances, affecting the rights, interests, or obligations of the parties, in all such cases courts of equity will refuse to decree specific performance, upon the plain ground that it would be inequitable and unjust.' . . .

"Another reason exists for denying the plaintiff the relief which he seeks. There is a well-settled principle that 'a plaintiff calling for performance after a great lapse of time must satisfy the court that he did not lie by to take advantage of fortuitous circumstances, that during the whole period he had it in contemplation to perform the contract, and that the other party expected to be called upon.' Alley v. Deschamps, 13 Ves. Jr. 225, 33 Eng. Reprint, 278; Tiernan v. Roland, 15 Pa. 429."

In Findley v. Koch, 126 Iowa, 131, 101 N. W. 766, the supreme court of Iowa says:

"Without elaboration, we think the real question before us is this: Did the plaintiffs negligently fail to take such steps as they should have taken toward the carrying out of the contract until they found that the value of the land had materially increased, and then attempt to enforce specific performance merely because of this increase in value, and not on account of the continuing purpose to carry out the original contract? If so, they are not entitled to relief, for the purchaser has no right to speculate with the seller, practically abandoning the contract so far as its performance is concerned, until he finds that to insist upon per-formance will be of material advantage, and then, against the interests of the seller and to his prejudice, insist that the contract shall be performed. A court of equity, in the matter of specifically enforcing a contract to convey, will insist on a showing of the utmost good faith on the part of the purchaser, and require that he make it appear that he has been ready, willing, able, and even eager throughout to have the contract enforced, and will refuse relief if, on account of his negligence or un-willingness at any time to perform his part, the performance has been delayed, especially if such delay renders performance inequitable and unjust to the seller."

To the same effect see C. A. Finch Lumber Co. v. Weishaar, 55 N. D. 695, 215 N. W. 155; Graceville State Bank v. Hofschild, 166 Minn. 58, 206 N. W. 948; Stadelmann v. Boothroyd, 170 Minn. 430, 212 N. W. 908; Wadge v. Kittleson, 12 N. D. 452, 97 N. W. 856; Helgebye v. Dammen, 13 N. D. 167, 100 N. W. 245; Otto v. Friese, 20 N. D. 86, 126 N. W. 503; Harrington v. Eggen, 51 N. D. 87, 199 N. W. 447.

"A written contract may be rescinded or abandoned by parol by mutual agreement, but by some authorities such parol waiver or rescis-sion is not a bar until it is acted upon or partially carried out." 36 Cyc. 719.

"Abandonment of the contract may be inferred from circumstances or the conduct of the parties inconsistent with an intention to perform." 36 Cyc. 720.

"Although time is not of the essence of the contract, plaintiff's delay for an unreasonable time either in performing its terms, or in the prose-cution of his claim for specific performance by filing a bill, may amount

to such laches on his part as will disentitle him to the aid of the courts. In the oft repeated words of an English case plaintiff must show that he has been 'ready, desirous, prompt and eager' in complying with his part of the contract and in filing his suit for relief, or else must show a good and sufficient reason for his delay." 36 Cyc. 721.

"Plaintiff may be guilty of laches, although no time for performance was fixed in the contract. Such a contract, if not void in equity for uncertainty, implies an agreement to do the act in a reasonable time."

"Plaintiff's laches may consist in a failure to prosecute with diligence the suit for specific performance, although the suit may have been seasonably begun."

"Unexplained laches or acquiescence for an unreasonable length of time after the party was in a situation to enforce his right is evidence of a waiver or abandonment of right."

"Although plaintiff's delay has not persisted so long as to amount to an abandonment, the situation of the parties may have so changed that the specific enforcement of the contract would be inequitable. A hardship to defendant from change of circumstances, accompanied by unreasonable delay on plaintiff's part, is frequently a bar to the suit, although a similar hardship, in the absence of such delay, would not constitute a defense." 36 Cyc. 724.

From the evidence in the case at bar, plaintiff's conduct would amount to little more than gambling or speculation. If the lands went up in value, he would hold Goulet to the contract. If the lands depreciated, he would keep silence. If Goulet sold the lands, he would sue to recover damages. A court of equity will not lend its aid to any such transaction.

The evidence shows that the taxes upon the Barnes county lands for the years 1916 to 1925, inclusive, amounted to $14,203.56. The annual interest on the contract would be about $6,750. There is nothing in the evidence to show that the income from one-half of the crop on the Barnes county lands, after taking out seed and expenses, would pay the interest and taxes. There is nothing in the evidence to show that the defendant, Goulet, profited in any way by the transaction in taking back these lands. And there is nothing to show that the plaintiff, Raasch, would be entitled to any credit upon the contract up to the year 1925, when the lands were disposed of. Raasch owed a greater degree of

frankness and fair play to Goulet than he did to the Lund Land Company, because Goulet was not dealing with Raasch directly. Goulet could not know whether Raasch was claiming any interest under the Lund Land Company contract, or whether he desired to perform said contract, without some express statement on Raasch's part or some overt act. It seems to this court that under all these circumstances Goulet had a right to suppose that Raasch had entirely abandoned the land and abandoned any rights that he might have had under his contract (if indeed Goulet suspected that he had any such rights), and it seems to us it would be inequitable to permit the plaintiff, after complete silence and laches covering a period of ten years, to enforce specific performance of the contract, even if such a decree were physically possible, and it is our view that Raasch in fact and in law completely abandoned the premises and the contract.

The theory of the plaintiff here is that the defendant, Goulet, first breached the contract by taking possession of the lands and dispossessing the plaintiff, and therefore that it was not incumbent upon the plaintiff to make any tender of payment or to offer to do anything under the contract. But this is not the law. When Goulet entered upon the land in 1916 and ousted Raasch from possession he demonstrated that he was choosing to terminate the contract. He had previously demonstrated it by serving notice of cancellation upon the Lund Land Company, and Raasch knew that the notice had been served, and he knew that Goulet was electing to terminate and rescind the contract. It was then up to Raasch to act within a reasonable time, and he could not remain quiescent for an entire decade, during all that time acquiesce in the actions of Goulet, and then claim that he was not bound by such actions merely because Goulet in the first instance may have breached the contract.

The plaintiff further claims in this case that he is entitled to recover damages even though the court cannot grant a decree for specific performance.

The supreme court of Iowa in Findley v. Koch, 126 Iowa, 131, 101 N. W. 766, says:

"Of course in an action for specific performance, the plaintiff may have relief by way of damages, if, on account of any fault or wrong on the part of defendant, or any change of conditions not due to the plain-

tiff's fault, equitable relief by way of decree for specific performance cannot be effectually afforded. . . . If plaintiffs are not entitled to specific performance because of want of equity, when they might have had the contract performed had they proceeded with diligence to assert their rights under it, they are not entitled to damages for breach of the contract, for the same reasons which can be urged against specific performance can also be urged against the action for damages where the vendor has been able and willing to perform his part of the contract, and his failure to perform has been due to want of willingness to perform on the part of the vendee."

We quote the following from Morgan v. Dibble, 43 Cal. App. 116, 184 Pac. 704:

"The right to pecuniary compensation in lieu of specific performance 'assumes, of course, a sufficient contract, performance or an offer to perform by the plaintiff, and every other element requisite, on his part, to the cognizance of his case in chancery.' Milkman v. Ordway, 106 Mass. 232, 254. There is no authority for holding that equity can grant damages unless some case of equitable relief is made out also, to which the damages would be applicable or subsidiary. Bourget v. Monroe, 58 Mich. 563, 566, 25 N. W. 514. An action to recover damages in lieu of specific performance lies not at law, but in equity, for the right to such damages depends upon the right to specific performance, and is not available until the latter is established. Cooley v. Lobdell, 153 N. Y. 596, 603, 47 N. E. 783. A court of equity will not grant pecuniary compensation, in lieu of specific performance, unless the case presented is one for equitable interposition. Marks v. Gates, 14 L.R.A.(N.S.) 317, 321, 83 C. C. A. 321, 154 Fed. 481, 12 Ann. Cas. 120. 'In other words, the ancillary power to award compensatory damages can only be exercised in a case where the equitable relief prayed for might have been given.' Clark v. Rossario, Min. & Mill. Co. 99 C. C. A. 534, 543, 176 Fed. 180, 189."

To the same effect see Kinney v. Schlussel, 116 Or. 376, 239 Pac. 818.

The same rule is laid down in 36 Cyc. pp. 747 to 750.

"As a general rule, if plaintiff fails to make out a case for specific performance, especially if the failure is by reason of his own default, he is not entitled to have the case retained to award him compensation

for services rendered, improvements made, return of purchase price paid, or damages, unless some special equity intervenes."

In the present instance then, the plaintiff, Raasch, having shown that he is not entitled to the relief of specific performance of the contract, because of his abandonment of the contract, cannot recover damages for the breach of the contract by Goulet, and is not entitled to recover back the purchase money which he alleges that he paid to Goulet, conceding that he paid any, though there is nothing in the evidence to show that any moneys ever paid by Raasch to the Lund Land Company were paid to Goulet. The only moneys which Raasch ever paid to the Lund Land Company was the sum of $5,000, secured by the mortgage on the Nebraska land to John F. Webber. There is no showing, however, that this $5,000 was actually paid to Goulet, and even granting that it was so paid, there is absolutely no evidence that Goulet was conscious of any fraud, or that he knew the money came from Raasch, or that it was received in anything but good faith under his contract with the Lund Land Company. But even if we assume it to be the law (and upon this point we make no determination) that Raasch, as the equitable assignee of the Lund Land Company contract with Goulet, would have a right in the first instance to recover back from Goulet all of the moneys paid him by the Lund Land Company, yet that would not avail the plaintiff here because, as shown above, the evidence is conclusive that he was at fault in not performing and wholly abandoned all his rights under his contract.

There is, however, another and a more potent reason why the plaintiff, Raasch, cannot recover in this case.

In the fall of 1916, when Casper F. Raasch discovered that he had been swindled and defrauded by the Lund Land Company, when he knew that they had no title to the Barnes county land, and that the moneys received by them upon the Webber mortgage had never been applied upon the indebtedness covering the Nebraska land, and that all the interest and title the company had in the Barnes county land by reason of their contract for deed with Goulet had been canceled, what remedies were open to Raasch?

In Kruse v. Bush, 85 Or. 394, 167 Pac. 308, we find the rule succinctly stated:

"One who has been induced by fraudulent representations to become

the purchaser of property has, upon the discovery of the fraud, three remedies open to him, either of which he may elect: He may rescind the contract absolutely and sue in an action at law to recover the consideration parted with upon the fraudulent contract; he may bring an action in equity to rescind the contract, and in that action have full relief; lastly, he may retain what he has received and bring an action at law to recover the damages sustained."

See also 39 Cyc. 1997, ¶ B; McCabe v. Kelleher, 90 Or. 45, 175 Pac. 608; Good v. Story, 91 Okla. 3, 215 Pac. 614; Baker v. Carstenbrook, 78 Cal. App. 133, 248 Pac. 295; Rayburn v. Norton, 117 Or. 328, 243 Pac. 560.

"When a party has been induced to enter into a contract by false and fraudulent representations, he has several remedies. He may affirm the contract, keeping what he has received under it, and maintain an action to recover the damages which he has sustained by reason of the fraud, or he may set up such damages as a defense or by way of counterclaim, if sued on the contract by the other party. Affirmance of the contract is not a waiver of the fraud and does not bar the right to recover such damages, but merely bars a subsequent rescission." 13 C. J. 395, § 304.

"Instead of affirming the contract the party defrauded may, subject to the limitations hereafter stated, rescind the contract, and pursue the remedies based on such a rescission." 13 C. J. 396, § 305.

"Instead of affirming the contract, the party defrauded may sue in equity in a proper case to cancel or to rescind it and also to receive what he has parted with, and for other equitable relief." 13 C. J. 396, § 307.

Which of these three remedies, if any, did Raasch pursue? It is very apparent that he selected the one stated in rule number 2, by commencing an action in the district court of Cass county, Nebraska, against the Lund Land Company and all those connected with the Nebraska and Barnes county lands. This was an action in equity to cancel and annul the deed which he had given the Lund Land Company to his Nebraska farm; in other words, he sought to get back what he had given the Lund Land Company in exchange for the Barnes county lands, and he prosecuted this action to its conclusion. The Nebraska courts cancelled his

deed and returned him his land free and clear of all liens or claims of any kind, except the $5,000 mortgage to Webber.

Following this action, Raasch brought suit in the Federal court at Fargo against the Lund Land Company, and others, to recover damages sustained by him in connection with the exchange of the lands, and he secured judgment against these defendants for over $12,000.

What was the effect of these actions by Raasch upon the contract between himself and the Lund Land Company? It cannot be controverted that it amounted to an entire rescission of that contract—and rescission means extinction. Section 5933, Revised Codes of North Dakota for 1913. "A contract is extinguished by its rescission." Section 5934 states when rescission is permitted, and § 5936 gives the rules governing rescission.

In Scott v. Walton, 32 Or. 460, 52 Pac. 180, the court says:

"A party who has been induced to enter into a contract by fraud, has, upon its discovery an election of remedies. He may either affirm the contract and sue for damages, or disaffirm it and be reinstated in the position in which he was before it was consummated. These remedies, however, are not concurrent but wholly inconsistent."

We find the rule thus stated in 13 C. J. 611, § 653:

"One induced by fraud to make a contract may on discovery of the fraud either affirm the contract and sue for damages, or assert them by way of counterclaim, or he may repudiate the contract, tender back what he has received under it, and recover what he has parted with, or its value, even in the hands of third persons, unless they are bona fide purchasers for value, without notice of the fraud, but the adoption of one remedy excludes the other. It should be noted, however, that, where a performance in part has been accomplished before discovery of the fraud, and a repudiation of the contract is impracticable, continuance of performance will not constitute a ratification precluding relief independent of the contract."

"Generally speaking rescission abrogates the contract not partially but completely, and after a binding election to rescind, a party cannot insist on rights thereunder; but each of the parties is returned to his previously existing rights." 13 C. J. 623, § 683.

See Warnes v. Brubaker, 107 Mich. 440, 65 N. W. 276.

We quote also from Elgin v. Snyder, 60 Or. 297, 118 Pac. 280:

"One induced by fraud to make a contract, on discovering the fraud, has an election, either to affirm the contract and sue for damages, or disaffirm and be reinstated to his former position. But the adoption of one remedy excludes the other."

See also Beare v. Wright, 14 N. D. 26, 69 L.R.A. 409, 103 N. W. 632, 8 Ann. Cas. 1057.

The plaintiff, Casper F. Raasch, made an election of remedies. He elected to rescind his contract with the Lund Land Company. He might have decided not to rescind it. He might have decided to retain the Barnes county lands and perform the contract which the Lund Land Company had with Goulet. But he very wisely, no doubt, concluded that the Barnes county lands were not worth what the Lund Land Company owed Goulet upon them. Or he may have been in such a financial condition that he could not carry out the terms of that contract. Hence his decision to go back to Nebraska and endeavor to recover from the Lund Land Company his Nebraska ranch, and, having done this, to bring a suit to recover damages against those who had defrauded him. He having made his election of remedies, he is now bound thereby. He could not rescind the contract which he had with the Lund Land Company and later come back and claim that it was alive and in force and sue for specific performance. The minute he rescinded his contract, he forever placed himself in a position of nullifying such contract and agreeing to give up all rights which he had under it.

It being the view of the court that the plaintiff both rescinded and abandoned the contract upon which he bases his prayer for equitable relief, it is not within the power of the court to assist him, and the judgment of the lower court must be affirmed.

BURKE, Ch. J., and CHRISTIANSON, BIRDZELL, and BURR, JJ., concur.

MR. JUSTICE NUESSLE did not participate; HONORABLE GEO. M. McKENNA, Judge of Third Judicial District, sitting in his stead.