## ALBERT O. ROSENWATER and David Rosenwater v. I. S. SELLESETH.

### (156 N. W. 540.)

**Action in equity — mercantile corporation — sale of interest in — insurance — fire loss — creditors — rescission of contract — delay in making — deeds — cancelation of — real estate — reconveyance — remedy — action for damages.**

Action in equity to rescind an executed sale of a half interest in a mercantile corporation for the purchase of which plaintiff had deeded a half section of of land, and to cancel deed or compel reconveyance. In February, 1911, plaintiffs purchased, and later, in April, took possession of the mercantile business, managing it until November, when the store building and stock of merchandise were totally destroyed by fire. Fourteen thousand seven hundred dollars insurance was collected and disbursed in payment of creditors, not paying the corporate debts in full. The business was closed out. While they were running the store, goods were bought and sold. A portion of the stock had been removed to start a branch store, for which corporate debts had been incurred. In July, 1912, a year and a half after the sale, plaintiffs served notice of rescission of the contract on the ground of fraudulent misrepresentations made by and inducing their purchase, claiming that, unknown to plaintiffs, the corportion had been insolvent when they bought their half interest in it.

*Held:* It was impossible to place the parties in approximately the *status quo* at the time of the sale on account of the destruction of the business by fire and the disbursement of the assets. This coupled with long delay in attempted rescission prevents any rescission. Plaintiffs cannot maintain an action to cancel the deeds or compel reconveyance of the real estate, but must be left to an action for damages.

Opinion filed February 4, 1916.

From a judgment of the District Court of Burke County, *Leighton,* J., defendant appeals.

Reversed.

*Geo. A. McGee* and *F. B. Lambert,* for appellants.

Upon a sale of a stock of goods, if both parties have the same opportunity to examine the goods, neither can recover for fraud. Smith, Fraud, § 75.

Failure to exercise ordinary care to avoid deceit will prevent recovery, and a recovery is barred by an opportunity to examine the property. Diligence is required of all parties. Smith, Fraud, §§ 3, 4, 61, 75, 85, 86, 205; 2 Pom. Eq. Jur. §§ 892, 893; Brown v. Leach, 107 Mass. 364.

Many cases lay down the rule that if means of knowledge are at hand and equally available to both parties, the buyer will not be heard to say he has been deceived. 35 Cyc. 74; Chrysler v. Canaday, 90 N. Y. 272, 43 Am. Rep. 166; Hill v. Bush, 19 Ark. 522; Van Velsor v. Seeberger, 35 Ill. App. 598; Wightman v. Tucker, 50 Ill. App. 75; Cagney v. Cuson, 77 Ind. 494; Salem India Rubber Co. v. Adams, 23 Pick. 256.

A party claiming the right to rescind a contract must act promptly upon discovery of the fraud claimed, or he will be deemed to have waived any right to rescind. Comp. Laws 1913, §§ 5934, 5936; Raymond v. Eddelbrock, 15 N. D. 231, 107 N. W. 194.

"A right to rescind is waived by any inexcusable failure to act for a period of fifteen months." Smith v. Detroit & D. Gold Min. Co. 17 S. D. 413, 97 N. W. 17; Bailey v. Fox, 78 Cal. 389, 20 Pac. 868; Gamble v. Tripp, 99 Cal. 223, 33 Pac. 851.

A delay of six weeks, without good reason, or unexplained, will raise a waiver. Rosenfield v. Swenson, 45 Minn. 190, 47 N. W. 718.

Rescission must be made promptly. Spoonheim v. Spoonheim, 14 N. D. 380, 104 N. W. 845; Annis v. Burnham, 15 N. D. 577, 108 N. W. 549; 2 Pom. Eq. Jur. § 917; Marten v. Paul O. Burns Wine Co. 99 Cal. 355, 33 Pac. 1107; 4 Thomp. Corp. § 4154.

Plaintiffs have never restored or offered to restore the consideration for the contract which they seek to rescind. This is necessary. Smith, Fraud, § 138; 8 Century Dig. Am. ed. cols. 1804, 1806; 43 Century Dig. cols. 466, 472; Lovell v. McCaughey, 8 S. D. 471, 66 N. W. 1085; Johnson v. Burnside, 3 S. D. 230, 52 N. W. 1057; L. J. Owens Co. v. Doughty, 16 N. D. 10, 110 N. W. 78; Houghton Implement Co. v. Vavrosky, 15 N. D. 308, 109 N. W. 1024; Sullivan v. Bromley, 26 S. D. 147, 128 N. W. 586; 6 Pom. Eq. Jur. § 688.

The rule of *caveat emptor* applies. Smith, Fraud, § 171.

Where there are no confidential relations, and the parties deal at arm's length, there is no duty that devolves on the seller to disclose facts which each has an equal opportunity to ascertain. Smith, Fraud, § 21.

Plaintiffs have put the property which they obtained in such position

that they cannot restore same to defendant. They, by their own acts, have brought this condition into existence. Tarkington v. Purvis, 128 Ind. 184, 9 L.R.A. 607, 25 N. E. 879; Wright v. Dickinson, 67 Mich. 580, 11 Am. St. Rep. 602, 35 N. W. 164; Sportsman Shot Co. v. American Shot & Lead Co. 11 Ohio Dec. Reprint, 821; Bailey v. Fox, 78 Cal. 389, 20 Pac. 868; Brown v. Duplantier, 1 Mart. N. S. 312; Ledoux v. Armor, 4 Rob. (La.) 381; Richard v. Parrott, 3 Rob. (La.) 75; Peterson v. Burn, 3 La. Ann. 655; Horn v. Buck, 48 Md. 358; Carter v. Walker, 2 Rich. L. 40; Hoadley v. House, 32 Vt. 179, 67 Am. Dec. 167; McCrillis v. Carlton, 37 Vt. 139, 86 Am. Dec. 700; Chesley v. Soo Lignite Coal Co. 19 N. D. 18, 121 N. W. 73; Smith v. Brittenham, 98 Ill. 188.

"Where a buyer exercises acts of ownership over the goods, as by selling a number of them, he cannot thereafter rescind." Wolf v. Dietzsch, 75 Ill. 205; Cahen v. Platt, 9 Jones & S. 483; 2 Pom. Eq. Jur. §§ 897, 965; Marten v. Paul O. Burns Wine Co. 99 Cal. 355, 33 Pac. 1107; 4 Thomp. Corp. § 4154.

Fraud must be established by clear and convincing evidence. Richards v. Millard, 146 Wis. 552, 131 N. W. 365.

It is never presumed. Barrie v. Frost, 105 Ill. App. 187.

*E. R. Sinkler* and *M. O. Eide,* for respondents.

The complaint in this action, tested by the strictest rules of pleading, is sufficient. It has not been attacked by demurrer, neither was it assailed by objection to the offer of evidence at the trial, under it. But the findings and judgment cure any defect, if in truth any existed. This is an action for false representations as to the value of a stock of goods. The questions of equal opportunity to examine, and of waiver, are not involved. Liland v. Tweto, 19 N. D. 551, 125 N. W. 1032; Notes to Hedin v. Minneapolis Medical & S. Institute, 35 L.R.A. 424; and Fargo Gaslight & Coke Co. v. Fargo Gas & E. Co. 37 L.R.A. 593; National Bank v. Taylor, 5 S. D. 99, 58 N. W. 297.

Where there is no open way by which the buyer of goods can discover their worthlessness, it is a fraud on the part of the seller to remain quiet. Concealment implies design or purpose. Liland v. Tweto, 19 N. D. 551, 125 N. W. 1032; 20 Cyc. 63; Jordan v. Pickett, 78 Ala. 331; Hoock v. Bowman, 42 Neb. 80, 47 Am. St. Rep. 691, 60 N. W. 389.

The corporation in which defendant held stock which he exchanged with the plaintiffs for their land was insolvent at the time of the transaction, and this was known to defendant at such time. State v. Bomer, 103 Iowa, 106, 72 N. W. 424; 22 Am. & Eng. Enc. Law, 1238; Redding v. Godwin, 44 Minn. 355, 46 N. W. 565.

Where there is any defect, imperfection, or omission in a pleading, in form or substance, which would have rendered it demurrable, yet if issue is joined, and is such as requires proof of the facts so imperfectly pleaded or omitted, and without which proof it is not presumed that the court would direct, or the jury give, a verdict, any such defect is cured by the verdict. Ashe v. Beasly, 6 N. D. 191, 69 N. W. 188; Buchanan v. Minneapolis Threshing Mach. Co. 17 N. D. 343, 116 N. W. 335; 31 Cyc. 764; Delaney v. Western Stock Co. 19 N. D. 630, 125 N. W. 499.

There is a vast difference between the sale of a stock of merchandise and a sale of a house, a horse, or other piece of property open to personal inspection and view, and the rules applicable are different. Fargo Gas & Coke Co. v. Fargo Gas & E. Co. 4 N. D. 221, 37 L.R.A. 593, 59 N. W. 1066; Liland v. Tweto, 19 N. D. 551, 125 N. W. 1032.

Goss, J. In February, 1911, plaintiffs purchased of defendant his one half of the corporate stock of a corporation known as the Lowry Mercantile Company, in Minnesota. For it they gave two farms in North Dakota. Plaintiffs claim, and the trial court found, that in the trade defendant made false representations as to the value of the merchandise stock, and that dividends had been declared and paid on it, and that the corporate stock was worth par, and that the business was in a prosperous and profitable condition, while in fact the business was in an insolvent condition and the stock was worthless. Plaintiffs took possession in April, 1911, of the merchandise business with its stock of goods. One of the plaintiffs had spent a week or more in the store of the mercantile company before dealing, and had gone over its books and merchandise stock in a general way to ascertain the worth and financial condition of the institution before buying in. After such examination the deal was made, and the possession of the corporate stock delivered, and the merchandise business taken over by plaintiffs. From April, 1911, to November, 1911, the plaintiffs managed and controlled the

33 N. D.—17.

business. It did not prosper, and a meeting of the stockholders, including plaintiffs, was had November 18, 1911, at which a "resolution was unanimously passed to put the company in the hands of a trustee for the benefit of creditors." Before an assignment was made, however, the mercantile building with its stock of merchandise was burned. One of the stockholders, Iver Selleseth, defendant's brother, was then arrested, accused of having caused the fire, but was discharged on preliminary examination. While plaintiffs were conducting the business they continued to buy goods of the same wholesale houses to the extent of several thousand dollars worth, and sales had been made from the stock in the usual conduct of the business. Also, a portion of the merchandise stock had been taken to Battleview, North Dakota, where a branch store was established and sold. Seven hundred and twenty-four dollars corporate indebtedness had been incurred to wholesale houses for new goods taken to Battleview. Plaintiffs complain of having discovered during this time that notes given for merchandise stock to the wholesalers were outstanding and unpaid to the extent of several thousand dollars, having been deceived at the time of purchase by false entries in the books showing payment of goods actually unpaid for. In the fire some of the books were destroyed, among them the inventories of the stock. It is clear from the testimony of the plaintiffs that they did not know the condition of affairs at the time they bought the business, probably relying upon the statements of the seller. They were evidently inexperienced, and not business, men. The proof is uncertain as to the financial condition, solvency, or insolvency of the concern when purchased. Considerable is left to speculation as to whether the failure was because of business mismanagement by plaintiffs during 1911, or whether the corporation was insolvent at the time of the sale in February.

However, after the fire, the plaintiffs distributed the proceeds of the insurance among the creditors, collected accounts, and wound up the business. Only the lots on which the building stood remain unsold. During all of this time they seem to have made no complaint that they were dissatisfied, and defendant remained in possession of the farms given in exchange for the stock. On July 26, 1912, a year and a half after the sale, a letter was written defendant by the attorneys for plaintiffs, notifying him for the first time that the plaintiffs rescinded the purchase of

the corporate stock and the sale of their lands therefor, because of false representations made and inducing the exchange, and demanded that he reconvey the land. With the letter were inclosed the shares of corporate stock received for the lands, which stock was by defendant promptly returned. The complaint recites the false representations as the inducing cause of the deal, their known falsity; that the stock received for the land was worthless; "that these plaintiffs immediately upon discovering the false, deceitful, and fraudulent representations hereinbefore mentioned, and prior to the commencement of this action. and as soon as they became aware of their right so to do, did restore and deliver to the defendant all of the stock certificates heretofore mentioned, and did restore and offer to restore to the defendant all of the property they had procured from the defendant, and did rescind said contract and demand that the defendant deliver to the plaintiffs said $800 note (given by them to defendant as the excess of the purchase price over the land transferred for the stock) and make, execute, and deliver deeds to said lands to the plaintiffs." The trial court found for the plaintiffs, and adjudged a reconveyance and a cancelation of the note or an alternative judgment against defendant for its amount. A trial *de novo* is demanded on this appeal.

The evidence would seem to establish conclusively that ordinary business prudence would have caused plaintiffs, within a reasonable time after their purchase, to have taken stock of what they had bought, and ascertained their liabilities. They allege that the stock of goods was worth much less than represented, and have offered the testimony that a year and a half before this sale the values of the goods as carried upon the inventories taken greatly exceeded the market price of second-hand goods. In this way they would reduce the price of the stock on hand sufficient to establish the insolvency of the corporation. Then they argue that an insolvency once shown to exist is presumed to continue, or at least to cast the burden upon defendant to establish the contrary to escape imputation of insolvency at the time of the sale. But the proof made as to this is far from conclusive. Doubtless the apparent value of any second-hand merchandise stock could be similarly depreciated. Plaintiffs should have inventoried the stock and have been in position to make proof of their cause of action, instead of depending upon infer-

ences to establish fraud. They were likewise negligent in failing to discover their financial condition until the fire had caused the creditors to present claims, though they kept the corporate books. Even the proof of the amount of claims at that time outstanding is indefinite and almost wholly hearsay, on a matter easy to establish by clear and competent proof. They do not show their disbursements for stock or expenses or time or cash sales while running this business. In short, the proof is indefinite as to what they bought of defendant, what they sold or took out of the stock, what debts they assumed, and what debts they contracted, as well as what they owned when burned out, and what they afterwards paid and what they still owe. They have no definite knowledge on these matters,—only estimates and approximates are given. Their failure of proof in these respects results from their own carelessness. And if they conducted this business from April to November in the same way, it is not to be wondered at that it went upon the rocks. They make no showing of how many thousands of dollars of claims outstanding at the time of the fire resulted from purchases made by them during the summer. They have not established the amount of goods taken from the stock with which to start their branch store at Battleview. That is also left to conjecture, except that it appears that $724 of their liabilities was for the purchase of new stock for that place, bought on the corporation's credit.

And it is significant that plaintiffs found no fault with their deal until eight months·after the fire, and until after they had disbursed the entire proceeds of the insurance and collections made. And they must have been fully aware of any fraud perpetrated on them in the sale of this stock by November, 1911, at the latest. They then realized that the business was insolvent, and, holding 50 per cent of the corporate stock, voted to place the concern under a trustee for benefit of its creditors. Had they then promptly rescinded, a court of equity might perhaps have overlooked their palpable negligence in conducting the business for eight months prior without ascertaining its financial condition. But with bankruptcy thus confronting them in November, they were required to make an immediate rescission or waive the right to rescind. Thereafter it was not a matter of conducting the business, but instead using the stock to pay creditors in winding up affairs in settlement of corporate

and their individual liabilities. However, no effort to rescind was made. Buildings and stock were burned, and with the fire the invoices were destroyed. And the inference is that, through their negligence, they were underinsured when burned out.

Albert Rosenwater, manager of the business, testifies:

Q. Upon the building and stock you didn't carry enough insurance. Isn't that a fact?

A. I thought so at that time.

Q. And the fire cost you and Iver Selleseth a good deal of money didn't it?

A. Yes, sir.

Q. Do you know how much money was received from the insurance companies, that is, how much the insurance policies were for?

A. I know what they were in force for.

Q. What was the amount?

A. Fifteen thousand seven hundred dollars.

Q. What was done with this much money?

A. I suppose it went to pay the creditors.

From hearsay sources it may be inferred that the amount of insurance received paid two thirds the total liabilities, but who they were paid by does not appear. The amount of the loss occasioned by the fire is not shown, although admittedly considerable. So much for the facts.

This action is one in equity for a rescission of the sale and cancelation of the deeds and note, to the end that by decree in equity plaintiffs may recover all the real estate and property given in exchange for the corporate stock. The right to recover upon any fraud practised by the defendant upon plaintiffs is based upon the rescission upon discovery that they had been victimized. Among the grounds urged for a reversal, appellant contends: (1) "Plaintiffs, not having rescinded promptly on discovery of the alleged fraudulent acts, have waived their right to rescind;" and (2) "plaintiffs have never restored to the defendant the consideration for the contract which they asked to have rescinded, and that therefore the court is without authority to grant plaintiffs equitable

relief." Both of these assignments are well taken. Assuming fraud in the sale, plaintiffs could elect (1) "to execute the contract and take its benefits so far as obtainable, and recover any damages sustained by the false statements; or (2) to rescind the contract, and recover any moneys paid or property delivered under it." Sonnesyn v. Akin, 14 N. D. 248, 104 N. W. 1026. This action is brought under the second alternative. Quoting further from that opinion: "It is the rule that the defrauded party to a contract has but one election to rescind, and that he must exercise that election with reasonable promptitude after the discovery of the fraud," citing Dennis v. Jones, 44 N. J. Eq. 513, 6 Am. St. Rep. 899, 14 Atl. 913, and Bigelow, Fraud, 436. And "a sale of personal property followed by actual delivery cannot be rescinded unless the property be promptly returned to the seller, or its return tendered and refused, or its return waived." Syllabus to L. J. Owens Co. v. Doughty, 16 N. D. 10, 110 N. W. 78. The requirement is statutory (sec. 5936, Comp. Laws 1913) that "rescission when not affected by consent, can be accomplished only by the use on the part of the party rescinding it of reasonable diligence to comply with the following rules: 1. He must rescind promptly upon discovering the facts which entitle him to rescind if he is free from duress, menace, undue influence or disability and is aware of his right to rescind and 2. he must restore to the other party everything of value which he has received from him under the contract, or must offer to restore the same upon condition that such party shall do likewise, unless the latter is unable or positively refuses to do so." Incidentally it may be remarked that this is the identical language of § 1691 of the Civil Code of California governing rescission not affected by consent. "The contract did not provide for the mode by which it could be rescinded. The provisions of the statute must therefore control, and it provides that as a condition of rescission that everything of value received under the contract must be restored or offered to be restored, and that the rescission must be promptly made," from the opinion in L. J. Owens Co. v. Doughty, 16 N. D. 10, at p. 13. "A fraudulent sale passes to the defrauded purchaser a title voidable at the option of the purchaser if rescinded with reasonable promptness after the discovery of the fraud." Syllabus to Ditton v. Purcell, 21 N. D. 648, 36 L.R.A.(N.S.) 149, 132 N. W. 347. Though in equity

the beginning of the suit, if promptly brought, may be regarded as sufficient notice of rescission where the *status quo* of the parties has not changed under the sale. Sneve v. Schwartz, 25 N. D. 287, 141 N. W. 348. Again, "Rescission of a contract is the act of canceling it by restoring the conditions existing immediately before it was made. Rescission is effected by each party returning to the other what has been received pursuant to the contract, or its equivalent. . . . The defrauded party has the option to treat the transaction as void or valid, and this right continues so long as the party having the election does not do anything which amounts to a ratification. The defrauded party is not required to give notice of disaffirmance, provided he does not, after knowledge of the fraud, retain the fruits of the fraudulent transaction, or tacitly or by affirmative action lead the other party to change his position by reason of apparent ratification." Raymond v. Edelbrock, 15 N. D. 231, at pp. 234, 235, 107 N. W. 194. "If a person desires to rescind a contract on the ground of fraud, and recover back what he has paid, he must act promptly on the discovery of the fraud. If he desires to rescind on the ground of fraud or mistake he must, on the discovery of the facts, at once announce his purpose and adhere to it. If he is silent and continues to treat the property as his own, he will be held to have waived the objection, and will be conclusively bound by the contract. He is not permitted to play fast and loose. In such case he is not permitted to experiment and see whether the transaction may turn out well. Acquiescence for a little time in such cases is a condonation." From Smith, Fraud, § 132. "The general rule is that a party desiring to rescind a contract procured by fraud must put the other party *in statu quo* as far as he is able to do it. Where the right to rescind springs from subsequently discovered fraud, the defrauded party does not lose his right to rescind because the contract has been partly executed and the parties cannot be fully restored to their former positions. But he must rescind *as soon as circumstances permit,* and must not go on with the contract after the discovery of the fraud, so as to increase the injury necessarily caused to the fraudulent party by the rescission." Section 133, same work. "Where a person has been defrauded in the purchase of goods, and desires to rescind the contract of purchase, the general rule upon the subject is that where the person

defrauded has done all that is reasonably possible to restore the parties to the condition in which they were before the contract was made, it is a rescission. He must return or offer to return all he has received if it is of any value. It is a familiar rule, and settled by a long line of authorities, that where a party discovers that fraud has been practised upon him in the making of a contract, it is his duty at once to repudiate the contract and tender back what has been received by him under its terms, so that all the parties may be placed as near as possible in the position occupied before the contract was consummated." Same work, § 135. "Equity does not strive to save the perpetrator of the fraud from any harm. It does, however, stand for the principle that no party may successfully invoke the aid of equity for the rescission of a contract, unless he is willing to restore the other party to the possession he enjoyed at the time the contract was made." Same text, § 138. "A person cannot be deprived of his remedy in equity on the ground of laches unless it appears that he had, or ought to have had, knowledge of his rights. But upon discovery of the grounds entitling him to rescission, he must act with reasonable promptness to avoid the imputation of acquiescence. . . . If the delay is unreasonable, and the adversary party has changed his position so that he cannot be placed *in statu quo*, rescission will be denied." Elliott, Contr. 1913 ed. § 2431. "Delay for an unreasonable time after the discovery of the ground for rescission may, without positive acts of ratification, amount to a waiver of the right to rescind." Section 2433, same work. "To obtain rescission of a contract for fraud, whether such relief is sought informally or by formal decree in equity, the adversary party must usually be placed *in statu quo* by the party seeking relief. And if, upon the discovery of the fraud, the defrauded party fails to offer to return whatever of value he has received under the contract, he affirms the contract." Section 2434, same treatise. "While it is not necessary that a buyer rescind a sale immediately upon his discovery of grounds therefor, the buyer must exercise his right to rescind within a reasonable time if the discovery of the facts justify a rescission. What is a reasonable time must in each case depend on the circumstances attending it. . . . The time within which the right is exercised must be computed from the discovery of the fraud or defect on which rescission is based, and not

from the date of the sale, but the buyer must use reasonable diligence to ascertain the facts, especially if there is anything to put him on inquiry." 35 Cyc. 151–B. "The general rule that to justify a rescission the parties must be placed *in statu quo* applies when rescission is sought by the buyer. The rule that the parties must be placed *in statu quo* does not require an absolute and literal restoration of the parties to their former condition, but it is sufficient if such restoration is made as is reasonably possible and such as the merits of the case demand. The buyer must, as a condition precedent to rescission, restore or offer to restore the property, and as a general rule cannot rescind if he has sold the goods or any part thereof, although it has been held in some instances that he may tender the money received therefor and rescind. . . . As a general rule, the buyer must return or tender all of the property received." 35 Cyc. 146, 147. Page, Contr. §§ 137–140. "One seeking to rescind must restore or offer to restore all benefits received under the contract, and if it has become impossible for him to do so, he cannot rescind, but most resort to an action for damages." 11 Abbott's N. Y. Cyc. Dig. p. 734. But plaintiffs realized the necessity of returning the property bought and of placing defendant in substantially the same position as he was at the time of the sale. This is shown by them pleading a return of the corporate stock upon attempted rescission and proof thereof made. But the return was only colorable. The stock was valueless, the property it had represented having been wasted, dissipated, and destroyed by plaintiffs. It was an impossibility to substantially or approximately reinstate the *status quo*. There exists not only a failure of proof of a right of rescission, but proof beyond question that rescission under such circumstances cannot be had. For authority denying right to rescind even in the absence of destruction or sale of the stock of goods, see Bailey v. Fox, 78 Cal. 389, 20 Pac. 868. This was an action of the same kind upon the same grounds to rescind the sale of a stock of hardware and agricultural implements sold upon inflated inventory, with rescission based upon false representations made on the sale, consummated November 30, 1895. Plaintiff did not discover the fraud until the following June. But with fraud established rescission was refused. It was said: "At the time the offer to rescind was made, it had become impossible by the act of the plaintiff himself, or jointly

with the other active partner, to place the defendant *in statu quo*. As
a result of the sale a partnership had been formed, as we have stated,
and the whole of the stock had become partnership property in which
Meinecke, who was not made a party to this action, had an interest.
A large part of the stock had been sold and new stock purchased on
credit, for which the defendant, as well as the other partners, was per-
sonally liable. This being the situation of affairs, it was utterly impossi-
ble to place any of the parties *in statu quo*. It is well settled that under
such circumstances there can be no rescission of the contract. Civil
Code, § 1691." To the same effect is Marten v. Paul O. Burns Wine
Co. 99 Cal. 355, 33 Pac. 1107. "He who would rescind a sale for fraud
must act diligently upon discovering the fraud, and must show himself
not only willing, but *able, to return the property received by him*."
Syllabus in Toby v. Oregon P. R. Co. 98 Cal. 490, 33 Pac. 550. "It
will be seen that when a breach of the contract has occurred the party
is often put to his election whether he will rescind or sue for damages,
and sometimes he cannot rescind, but must sue for damages *because he
cannot place the other party in statu quo*." Merrill v. Merrill, 103 Cal.
287–291, 35 Pac. 768, 37 Pac. 392. "It is clear upon principle that this
present action should not be maintained, because to maintain it would be
to violate the wholesome and fundamental doctrine that in such a case the
party claiming to be aggrieved must promptly rescind or offer to rescind
so as to put the other party *in statu quo*. He cannot wait to speculate
on future contingencies. The sale from appellant to respondent was
not void; *it was only voidable upon restoration of the consideration
paid*." Bancroft v. Bancroft, 110 Cal. 374–379, 42 Pac. 896. "If
equity can be done between the parties by placing them *substantially* in
the same position as far as practicable equity will grant relief." Green
v. Duvergey, 146 Cal. 379, 80 Pac. 234. These California cases con-
strue a statute identical with ours governing rescission. Besides plain-
tiffs have had the full benefits of the transaction, used thousands of
dollars of the proceeds of the merchandise stock in paying debts, part of
which at least they were personally liable for, and to that extent have
taken benefits of the contract of sale with knowledge of the fraud alleged.
They thereby conclusively affirmed the contract and lost any right of
rescission they might otherwise have availed of. Bennett v. Glaspell,

15 N. D. 239, 107 N. W. 45, and Annis v. Burnham, 15 N. D. 577, 108 N. W. 549.

Indeed, if rescission can be had in this case, under these facts, it is hard to conceive when it would not be allowable. To permit it would disregard the statutory requirements exacting promptness, return of consideration received, and the placing of the parties *in statu quo* as a condition precedent to rescission. It would likewise be in disregard of all that has been said upon those questions in the many previous decisions of this court. The judgment appealed from is ordered reversed and the action dismissed.