**SCHAFF  v.  KENNELLY et al.**

No. 7403.

Supreme Court of North Dakota.

Dec. 4, 1953.

J. K. Murray, Bismarck, for plaintiff-appellant.

Kelsch & Scanlon, Mandan, for defendants-respondents.

MORRIS, Chief Justice.

On September 24, 1951, the plaintiff, as purchaser, and the defendants, as sellers, entered into a written contract for deed involving the sale of the following property:

"Lots One (1), Two (2) and Three (3) in Block Forty (40), in the Original Town, now City, of Mandan, North Dakota, including all buildings thereon except one frame playhouse, which the parties of the first part reserve and shall have the privilege of removing from the premises within a reasonable time; Included also is the kitchen equipment contained in said house on said lots, consisting of steel cabinets, electric stove, gas refrigerator, electric dishwasher, garbage disposal, breakfastnook furniture, and

exhaust fan; and laundry equipment consisting of automatic washer, dryer and gas range; also all carpets on floors and all window shades and drapes now in the house."

The total purchase price was $35,000, $10,000 of which was paid at the time the contract was executed. The balance of the purchase price was to be paid as follows: $5,000 on January 30, 1952; $8,000 on January 30, 1953; $6,000 on January 30, 1954; and $6,000 on January 30, 1955. Interest was provided for at four per cent per annum, payable annually. The purchaser agreed to keep the buildings on the premises insured for not less than $25,000. The sellers agreed to give possession of the house on October 1, and the garage on October 10, 1951. The plaintiff actually took possession on September 28.

On or shortly after February 14, 1952, plaintiff served on the defendants by mail the following notice of rescission:

"Take Notice that the undersigned, Paul Schauf, does hereby rescind that certain contract for deed made between you and he on the 24th day of September, 1951 wherein and whereby you promised and agreed to sell him the following described real property situated in the City of Mandan, North Dakota, to-wit: Lots Two and Three (2 & 3), in Block Forty (40), in the Original Town, now City, of Mandan, North Dakota including certain buildings designated in said contract for deed, for the purchase price of Thirty-Five Thousand Dollars ($35,000.00).

"This rescission is based upon the following grounds, among others:

"1.) That you fraudulently misrepresented to the undersigned the condition of the dwelling house situated on said lots, among other things in this: that you guaranteed, warranted and represented that said dwelling house and all of its fixtures and appurtenances were in good condition and that there were no hidden defects

in said property; that in truth and in fact said dwelling house had been gutted by fire and the evidences of such fire have been covered up by repairs, which gutting by such fire greatly depreciated the value of said property.

"2.) That the sewer system was defective; that it did not and does not yet carry the waste water off and away from the said house; that said sewer was all blocked up and it is so defective that it can not be efficiently repaired without installing a whole new sewage system.

"3.) That after the sale of said dwelling house aforementioned and without the knowledge or consent of the undersigned, you took and carried away fixtures and appurtenances of said dwelling house and in place of the fixtures and appurtenances so removed, replaced some of them with cheap and defective ones; that such constitutes a breach of your contract.

"4.) That the undersigned hereby tenders and offers to execute and deliver to you the deed to such premises, re-transferring same to you on the condition that you contemporaneously therewith return to the undersigned the purchase price so paid to you, to-wit: Ten Thousand Dollars ($10,000.-00) or more; that upon your failure to acquiesce in this rescission and restore the purchase price so paid, the undersigned will deem it and take it as a fact that you refuse to acquiesce in this rescission."

On May 6, 1952, the plaintiff served on the defendants the summons and complaint in this action, setting forth the contract and fact that notice of rescission and restitution had been given. The grounds for rescission as contained in the notice were also alleged. The plaintiff then concluded:

"That by reason of the aforesaid facts, the defendants and each of them are now indebted to the plaintiff in the sum of $10,350.00, together with interest thereon at the rate of 4% from

date of payment of same to the defendants and to the insurance company for premiums; that the reasonable rental value of said property was and is the sum of $100.00 a month and that this plaintiff does hereby offer to allow the defendants credit on the aforementioned sum, the sum of $100.00 a month from the time the plaintiff took possession of same, to-wit: the 24th day of September, 1951, leaving a balance due the plaintiff from the defendants of $9,550.00, together with interest at the rate of 4% per cent per annum from the date of the contract."

The plaintiff then prays for a money judgment in the above amount. Under date of November 3, 1952, the plaintiff amended his complaint by amplifying the allegations of fraud. He realleged the portion of his former complaint above quoted and ended it with the same prayer for judgment.

To the plaintiff's amended complaint the defendants filed an amended answer and cross-complaint. They deny generally the allegations of the complaint. They admit the execution of the contract and the payment of $10,000 to them on September 24, 1951. They admit receiving the notice of rescission on or shortly after February 14, 1952, but deny that the plaintiff offered to restore everything of value which he had received from the defendants under the contract. They admit that the dwelling house and some of its furniture and furnishings were damaged by fire on August 7, 1948; but allege that the damage was fully repaired prior to the sale and that certain improvements and betterments were made whereby the real and personal property described in the contract were materially increased and enhanced in value.

The defendants further allege that plaintiff had actual knowledge and notice of all the facts of which he complains in his amended complaint prior to October 2, 1951; that he failed to act promptly in cancellation or rescission of the contract; and that the plaintiff has not returned or restored to defendants everything he has received of value, nor has he offered such restoration.

The cross-complaint of the defendants alleges the execution of the contract, defaults by the plaintiff, and asks for a decree of foreclosure thereof. The issues raised by the amended complaint and the amended answer were tried to a jury and a verdict rendered in favor of the plaintiff for $5,000. The defendants at the close of the case made a motion for a directed verdict, which was denied. The defendants moved for a judgment notwithstanding the verdict which included the same grounds that were set forth in the motion for directed verdict. The trial court granted the defendants' motion for judgment notwithstanding the verdict. Pursuant thereto judgment was entered dismissing plaintiff's cause of action and granting to the defendants judgment for foreclosure of the contract for deed. After entry of judgment the plaintiff moved for a new trial. On May 4, 1953, the trial court entered an order denying plaintiff's motion. The plaintiff appeals both from the judgment entered April 6, 1953, and the order denying a new trial entered May 4, 1953.

■■ The first point raised by the appellant is one of procedure and is based on the following facts: The verdict was rendered January 8, 1953. On January 15, 1953, the attorneys for defendants served on the plaintiff's attorney a notice of motion for judgment notwithstanding the verdict, to which was attached a motion for judgment notwithstanding the verdict setting forth grounds substantially the same as those upon which the defendants had moved for a directed verdict at the close of the testimony. The notice of motion stated that the motion would be brought on for hearing on the 29th day of January, 1953, at two o'clock p. m. The plaintiff objected to the jurisdiction of the trial court to hear the motion and now urges in this court that the trial court was without jurisdiction because the motion was not brought on for hearing or heard within ten days after the reception of the verdict.

Plaintiff's counsel points to a provision contained in Section 28–1510 NDRC 1943, as amended by Chapter 204 SLND 1951, which says:

"Within ten days after the reception of a verdict, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment notwithstanding the verdict entered in accordance with his motion for a directed verdict, * * *."

Plaintiff argues that although the motion and notice thereof were served on plaintiff's counsel within ten days after the rendition of the verdict, the motion was not brought on for hearing or filed in the office of the clerk of the district court until January 29, 1953; and that such procedure does not constitute compliance with the statute sufficient to vest jurisdiction in the court; and that the subsequent order of the court granting defendants' motion and directing the entry of judgment notwithstanding the verdict was beyond the power of the court and void.

A motion for judgment notwithstanding the verdict is a step taken within and as a part of a pending action. There seems to be no special statute as to how the motion shall be made, filed, or heard other than that above set forth. Section 28–2803, being a general statute with respect to motions, states:

"A motion, except when otherwise properly made in open court, shall be accompanied by notice thereof, together with copies of the affidavits or other papers in support of the same, or otherwise particularly specifying papers in the action which have been served, or which are on file."

If personal service is made of the notice of motion it must be at least eight days before the time appointed for the hearing. Section 28–2815 NDRC 1943. If, as plaintiff's counsel seems to contend, the time for hearing the motion must be set within the ten-day period prescribed in Chapter 204 SLND 1951, the moving party would have only two days to prepare and serve his papers in order to set the hearing within the ten-day period. Clearly this is unreasonable and no such result was intended by the legislature. The statute requires only that the motion be made within ten days. As to this, plaintiff's counsel contends that the service of the notice and motion on opposing counsel without the filing of the papers with the clerk is not sufficient and that the motion is not made until it is filed. Thus we are called upon to decide when a motion may be said to have been made.

The making of a motion is in some ways analogous to the commencement of an action in that it seeks the determination of the court with respect to a right claimed by the moving party. Under civil procedure in this state an action may be instituted and relief sought without filing papers in the office of the clerk of court.

"Civil actions in the courts of this state shall be commenced by the service of a summons." Section 28–0501 NDRC 1943.

Statutory provision is made for the filing of a summons and pleadings, Section 28–0511 NDRC 1943, but filing is not a condition precedent to the acquisition of jurisdiction of the court where personal service within the state is made. Johnson v. Engelhard, 45 N.D. 11, 176 N.W. 134. We have no statute that requires filing as a condition precedent to the making of a motion. It seems clear to us that a motion, when made otherwise than in open court, must be in the form and accompanied by the notice prescribed by Section 28–2803 NDRC 1943 and that the notice accompanying it must be in writing. Service must be made in the time and manner prescribed by Chapter 28–28 NDRC 1943. When the provisions of the statute have been followed and service thereof made within ten days after the reception of a verdict, a motion for judgment notwithstanding the verdict has been made within the time prescribed by Chapter 204 SLND 1951, although the motion has not been filed with the clerk of the district court.

The plaintiff further argues that where, as in this case, the motion for directed verdict is noticed for hearing more than ten days after the rendition of judgment, the same rule should apply as that laid down in Sea-Gate Tire & Rubber Co. v. Butts, 58 N.D. 232, 225 N.W. 787, wherein it was held that the trial court had no jurisdiction to hear a motion in the alternative for a new trial or for a judgment notwithstanding the verdict that was noticed to be heard before the time for appeal from the judgment had expired but was not brought on for hearing or in any manner presented to the court until after the time for appeal had expired and there was no agreement, either express or implied, for a continuance of the motion, to the hearing of which timely objection had been made. In that case the time for appeal from the judgment had expired. It had become final and the action was no longer pending. No such situation exists here.

"A civil action in a district court is deemed to be pending from the time of its commencement until its final determination upon appeal or until the time for appeal has passed, unless the judgment is sooner satisfied." Section 28–0510 NDRC 1943.

When the order here complained of was made the action was still pending in the district court. The motion was made within the ten-day period prescribed by the statute authorizing motions for judgment notwithstanding the verdict. The trial court heard and determined the motion at a time when he had jurisdiction of the case. His order is not vulnerable to jurisdictional attack. See Nicholson v. Roop, N.D., 62 N.W.2d 473; Farmers Insurance Exchange v. Arlt et al., N.D., 61 N.W.2d 429.

Section 9–0902 NDRC 1943 sets forth the only cases in which a party may rescind a contract. These paragraphs are of interest here:

"1. If the consent of the party rescinding or of any party jointly contracting with him was given by mistake or obtained through duress, menace, fraud, or undue influence exercised by or with the connivance of the party as to whom he rescinds or of any other party to the contract jointly interested with such party;

"2. If through the fault of the party as to whom he rescinds the consideration for his obligation fails in whole or in part; * * *."

Plaintiff's notice of rescission recites facts tending to support fraud and partial failure of consideration through breach of the contract by the defendants. Both grounds for rescission are stated in the complaint. Plaintiff's proof as to the failure of consideration through fault of the defendants is extremely weak and for the most part has been waived by subsequent conduct of the plaintiff. It consists mainly of petty irritations and minor disagreements such as sometimes arise between people who have been dealing with each other at arm's length and in an atmosphere of mutual mistrust, a situation which this record clearly shows existed both before and after the contract for the sale of the property in question was signed. There was a dispute over light fixtures which never was resolved and the record does not show the value of the property in dispute. The plaintiff claims that the defendants took a food warmer from the kitchen, which the evidence but vaguely describes. The defendants claim there never was a food warmer. The defendants took out some shelving from the house and the garage. They brought a load of it back. There is a dispute in the testimony as to whether it was all brought back. The defendants took the door knocker and upon complaint of the plaintiff brought it back and replaced it.

A failure or even a partial failure of consideration imports a breach of the contract. Page on the Law of Contracts, Section 2978. But every breach of a contract does not import failure of consideration. A breach of contract amounting to a failure of consideration must be a substantial breach in order to warrant

rescission of the contract. A failure of performance amounting to a breach of the contract which is not substantial is an insufficient basis for rescission in equity. 9 Am.Jur., Cancelation of Instruments, Section 28; Williston on Contracts, Revised Edition, Section 1457. Most of the small breaches of contract of which the plaintiff complained were remedied by the defendants and the remedy accepted. With respect to these, clearly any right of rescission was waived. As to the disputed food warmer and light fixtures, assuming the plaintiff's contentions to be correct, there would be but an inconsequential breach of the contract which would not be material to its total performance and would not be a ground for rescission of the entire contract. Illustration 3 under Section 275, Restatement of the Law of Contracts, is analogous and pertinent. We quote:

"A contracts to sell, and B to buy, Blackacre. Before the time fixed for the performance of the contract A wrongfully removes from the land a small building of ordinary construction. This breach of duty can be adequately compensated by damages and is not material."

The plaintiff has established no breach of the contract by the defendants which would warrant a rescission on the ground that through the fault of the defendants the consideration for plaintiff's obligation to purchase the premises failed in whole or in part.

The other ground for rescission upon which the plaintiff relies and places great emphasis is fraud. The two claims of fraud set out in plaintiff's notice of rescission were that the defendants fraudulently misrepresented the condition of the house in that damage that had been done by a fire some years previously had been concealed by repairs and that the sewer system was defective and cannot be effectively repaired. To these contentions of fraud the plaintiff, when he instituted this action, added another and alleged that after the plaintiff had purchased the property an adjoining owner had the south line to plaintiff's property surveyed and it was determined that the defendants owned only about one-half of a driveway that led to the street past the south side of the house and that the adjoining owner has set a fence through the driveway and rendered it useless to the plaintiff.

The evidence is sharply conflicting with respect to the three matters concerning which the plaintiff claims fraud. The sewer became clogged immediately after the plaintiff moved into the house and sewage backed up through a drain in the basement floor. The plaintiff called up Mr. Kennelly in Fargo and Kennelly arranged for and paid for having the sewer drain leading from the house to the street cleaned out and tree roots that had grown into it removed. The plaintiff testified that the sewer still does not work properly and that noxious odors pervade throughout the house. In this he is corroborated by his wife, son-in-law, and daughter. On the other hand, tenants to whom the plaintiff rented part of the house, including the basement, did not smell the odors and did not know that the sewer was clogged or caused trouble.

There is no dispute as to the fact that several years before the contract in question was made a fire had occurred in the basement of the house which had damaged the first floor joists and that in four rooms on the first floor and one on the second floor there had resulted either fire or water damage, or both. The plaintiff had read about the fire in the newspaper at the time it occurred. He discussed it with Mr. Kennelly. There is also no dispute as to the fact that Mr. Kennelly told the plaintiff that the fire damage had been repaired. The real dispute on this point is as to the extent and effectiveness of the repairs made. The plaintiff contends that the repairs were superficial and that damaged woodwork was resurfaced instead of being replaced; that the repair of floor joists left them in a charred and weak condition; and that floors had been carpeted over and their damaged condition concealed. On the other hand, according

to the defendants' evidence, the repairs were made in a thorough and workmanlike manner. The defendants expended over $24,000 after the fire in making repairs and improvements and in installing kitchen equipment, carpets, and drapes. Negotiations regarding the sale covered a period from about June first until the contract was signed in September. During that time the plaintiff made three thorough inspections of the house from basement to attic. On two of these occasions he was accompanied throughout the house by his wife. The third time she came to the house with him but stayed downstairs.

A U-shaped driveway partly encircles the house and affords access to the garage. The south leg of the driveway is partly on the property of the adjoining landowner. According to the plaintiff, Mr. Kennelly told him that the boundary was in the middle of the driveway but that it had been used for more than twenty years and that he had title by adverse possession. Later he testified that Kennelly never promised to include the south portion of the driveway in the contract for deed. Kennelly, on the other hand, flatly denies that he had told the plaintiff that he had acquired title to the south portion of the driveway by adverse possession.

■ Actual fraud is always a question of fact. Section 9–0310 NDRC 1943. The evidence of fraud being conflicting and this being an action at law for the recovery of money, the question of whether the plaintiff was fraudulently induced to enter into the contract was for the jury. We reach the conclusion, as did the trial court, that the evidence is sufficient to warrant a determination of fraud on the part of the jury and on that issue the verdict is binding on the court.

■ One who has been induced to enter into a contract for the purchase of real estate by fraudulent representations of the vendor may elect to affirm the contract, retain the property received under it, and bring an action against the vendor for damages. As an alternative he may elect to rescind the contract for fraud and restore to the other party everything of value which he has received from him under the contract, or offer to restore the same upon condition that the other party do likewise, unless the latter is unable or positively refuses so to do. Raasch v. Goulet, 57 N.D. 674, 223 N.W. 808; Kent v. Clark, 20 Cal.2d 779, 128 P.2d 868, 142 A.L.R. 576; Nevada Land & Investment Corp. v. Sistrunk, 220 Cal. 174, 30 P.2d 389; Kaluzok v. Brisson, 27 Cal.2d 760, 167 P.2d 481, 163 A.L.R. 1308; 55 Am.Jur., Vendor and Purchaser, Section 569; 12 Am.Jur., Contracts, Section 146; 17 C.J.S., Contracts, § 167; Thompson on Real Property, Permanent Edition, Section 4605.

■ A party who elects to rescind a contract on the ground that he was fraudulently induced to enter into it has a further choice of procedures. He may bring an action in equity setting forth his election to rescind and ask the court to declare a termination of the contract; or he may bring an action at law based upon his election to rescind and his restoration, or offer to restore, as required by Section 9–0904 NDRC 1943. In this case the vendee has chosen to take the latter course. He undertook to rescind without resorting to a court of equity and brings this action on the theory that rescission has been accomplished. A discussion of the distinction between an action at law to recover money on a contract that has been rescinded and an action in equity to obtain a rescission of the contract is found in Philpott v. Superior Court, 1 Cal.2d 512, 36 P.2d 635, 95 A.L.R. 990, and an annotation following that case, 95 A.L.R. 1000.

■ In order to effect a rescission the obligation rested on the plaintiff to give notice of rescission and make an offer to restore in compliance with the provisions of Section 9–0904 NDRC 1943. This section is identical with Section 1691 of the Civil Code of California. Decisions dealing with the California statute are therefore of particular interest in this case. A rescission cannot be effected without an offer to restore. Hammond v. Wallace,

85 Cal. 522, 24 P. 837; Thayer v. Magill, 13 Cal.App.2d 21, 55 P.2d 1272; Kent v. Clark, supra. This court has applied the rule in equitable actions to rescind. Loff v. Gibbert, 39 N.D. 181, 166 N.W. 810; Donovan v. Dickson, 37 N.D. 404, 164 N.W. 27; Rosenwater v. Selleseth, 33 N.D. 254, 156 N.W. 540.

The rule that we have been discussing has certain exceptions based upon sound reason, for instance, when restitution is rendered impossible by the act of the defendant, Liland v. Tweto, 19 N.D. 551, 125 N.W. 1032, or where the defendant has parted with nothing of value, Sneve v. Schwartz, 25 N.D. 287, 141 N.W. 348; Thayer v. Magill, 13 Cal.App.2d 21, 55 P. 2d 1272. But none of the exceptions apply to this case.

With respect to personal property this court has also held that as a condition precedent to rescission everything of value received under the contract must be restored or offered to be restored. Owens Co. v. Doughty, 16 N.D. 10, 110 N.W. 78; Fuller v. Fried, 57 N.D. 824, 224 N.W. 668.

It is stated to be the rule in California that

"in order to effect a unilateral rescission in pais of a contract, the rescinding party must give the other party prompt notice of his election to rescind, and must restore or offer to restore everything of value that he has received under the contract. Subject to applicable exceptions, compliance with such requirements as to an affirmative act of rescission and restoration is a condition precedent to maintaining an action for rescission or cancellation of a contract or other instrument on the ground of fraud, mistake, or other defect justifying its avoidance." 9 Cal. Jur. (2d) Cancellation of Instruments, Section 28.

In Paulson v. Hartzel, Mo.App., 93 S.W. 2d 1095, it was held that in an action at law by the vendee to recover from the vendor for money had and received recovery could not be had unless the vendee rescinded before commencing the suit.

In Lightner v. Karnatz, 258 Mich. 74, 241 N.W. 841, 842, involving an action to rescind two written contracts for the purchase of real estate, in discussing the difference between actions at law and actions in equity, the court said:

"There may be some confusion in the cases elsewhere on this subject, but in this state the rule is settled. A court of law entertains an action for the recovery of land or damages based upon a rescission by the party plaintiff. Rescission is a condition precedent to the maintenance of suit. It can be maintained only where rescission has taken place."

In Swan v. Great Northern Railway Co., 40 N.D. 258, 168 N.W. 657, L.R.A. 1918F, 1063, this court held that the plaintiff could not avoid a compromise settlement for personal injuries on the ground of fraud in the absence of a repayment or tender of the consideration received.

Rescission, once accomplished, completely abrogates the contract from the beginning. Funk v. Baird, 72 N.D. 298, 6 N.W.2d 569; Raasch v. Goulet, 57 N.D. 674, 223 N.W. 808.

The notice of rescission which the plaintiff mailed to the defendants on or about February 14, 1952, was defective in several particulars. Although it otherwise described the contract between the plaintiff and the defendants, it omitted one of the lots described in and covered by the contract. The notice of rescission did not offer to restore possession to the defendants, account for the rents collected by the plaintiff and his wife, or pay to the defendants the reasonable value of the use and occupation of the premises. The contract included personal property of considerable value that was specifically set out in the contract but is not mentioned in the notice.

The house was 44 x 40. It consisted of three stories and a full basement. The ga-

rage, which was separate from the house, contained a workshop and stalls for three cars. The plaintiff's testimony shows that at the time the notice of rescission was served the plaintiff was renting the basement of the house to a tenant for fifty or sixty dollars a month and was renting the third floor of the house to another tenant for fifty dollars a month. The wife of the basement tenant testified that the rental was sixty dollars a month for the basement and ten for the garage. Later on, still another tenant rented the third floor for seventy-five dollars a month. No offer was made to account for these rentals. The renting of part of the house continued until within nine days of the trial. When the notice of rescission is compared with the description of the property contained in the contract and considered in the light of undisputed testimony, it clearly fails to meet the requirements of Section 9–0904 NDRC 1943 that the party rescinding must restore or offer to restore everything of value which he has received under the contract.

The plaintiff points to four occasions on which he complained orally to the defendant, John Kennelly, about the house. On at least one of these occasions the plaintiff asked Kennelly to take the house and give him his money back. However, on none of them was there an offer of restoration by the plaintiff that could qualify as such under our statute. But the plaintiff contends that the written notice of rescission and these conversations constituted offers to rescind and restore; that the defendants pointed out no deficiencies in such notices or offers; and that all defects therein were therefore waived. He relies on Section 9–1218 NDRC 1943, which provides:

"The creditor must make objections to the mode of an offer of performance at the time it is made to him. If this is not done, any objection which could have been obviated at that time is waived by his failure to make the same."

In further support of his contention he cites Shermaster v. California Home Build-

ing Loan Co., 40 Cal.App. 661, 181 P. 409. That case involved an action to rescind two contracts. The purchaser's attorney wrote to the vendor offering to rescind the contracts and tendering a quitclaim deed upon payment to the purchaser of the purchase price with interest, cost of improvements, and damages. The vendor refused to accept the offer to rescind and merely took exception to the tender of the quitclaim deed without making specific objections. The court held that there was a sufficient offer and a direct refusal of rescission and although the plaintiff demanded more from the defendant than he was entitled to recover, the defendant could not take advantage of that fact in the absence of a specific objection to the tender. In support of its holding the court cited the Civil Code of California, Section 1501, which is substantially the same as our Section 9–1218 ND RC 1943. In that case it was held that there was a sufficient offer and a direct refusal. That is not the situation here. The offer of restoration in this case is fatally defective. The applicable provision of our code is Section 9–1208 NDRC 1943:

"An obligation is extinguished by an offer of performance made in conformity to the provisions set out in this chapter and with intent to extinguish the obligation. An offer of partial performance, however, is of no effect."

In this case the offer of restoration is at best an offer of partial performance of the plaintiff's obligation to restore and is of no effect.

The plaintiff also cites O'Keefe v. Routledge, 110 Mont. 138, 103 P.2d 307, 148 A.L.R. 409. In that case the defendant's offer to restore was held to be sufficient under a Montana statute much broader in scope than our Section 9–1218, which, if applicable at all to an offer to restore as an incident of rescission, requires only that "The creditor must make objections to the *mode* of an offer of performance at the time it is made to him." (Italics supplied.) See Colton v. Oakland Bank of Savings, 137 Cal. 376, 70 P. 225.

The plaintiff urges the applicability here of the rule set forth in Black on Rescission and Cancellation, Second Edition, Section 623, that

"any insufficiency in a tender of rescission and return will be waived by an absolute refusal of the other party to entertain the proposal at all."

The record does not present a factual basis for the application of this rule. It does not appear that the defendants refused to rescind. Plaintiff's counsel, on cross-examination of Mr. Kennelly, asked:

"At the time you received these two notices of rescission, Exhibits 2 and 3, what was your attitude,—to reject the rescission or to acquiesce in it? * * A. My attitude was that if I had been offered what I had sold Paul Schaff I would gladly have given back $10,000 and took the property back."

It is appropriate here to again refer to the amended complaint upon which the action was tried. Paragraph I describes the contract. Paragraph II pleads at length the facts pertaining to fraud in the inception of the contract. Paragraph III alleges a breach of the contract. Paragraph IV alleges that the plaintiff did not discover the defects of which he complains until on or about February 10, 1952, and thereupon promptly rescinded the contract and on or about February 14, 1952, offered to restore "to the defendants everything of value he had received from the defendants under said contract" upon condition that the defendants should do likewise. Plaintiff further alleges service of notice of rescission in writing which included a written offer to restore. Paragraph V of the complaint, which we heretofore quoted, sets forth that the defendants are indebted to the plaintiff in the sum of $10,350 and offers to allow defendants a credit of $100 per month from the time the plaintiff took possession as the reasonable rental value of the property. The plaintiff then prays for a judgment against the defendants for $9,550 with interest and costs. The cause of action thus pleaded is one at law for the recovery of money which the plaintiff claims to be due

him because he is entitled to a return of the purchase price of the property he purchased under the contract which he rescinded on or about February 14, 1952. If there has been no rescission, the plaintiff is not entitled to prevail. In order to prove a rescission it must appear that the plaintiff substantially complied with Section 9-0904 NDRC 1943, paragraph 2, and restored to the defendants everything of value which the plaintiff received from them under the contract or offered to restore the same upon condition that the defendants do likewise, unless the defendants were unable or positively refused to do so. The plaintiff wholly failed to comply with this provision of the statute. Upon this record the jury could not determine that there was a rescission, for as a matter of law there was none. The verdict cannot stand. The trial court properly set it aside and granted a judgment notwithstanding the verdict in favor of the defendants.

The trial court reached the conclusion that the plaintiff, after discovery of the alleged fraud, waived his right to rescind by his acts and conduct. Since we have determined that there was no rescission, it is unnecessary to determine the question of waiver. The evidence tending to support the proof of waiver has some bearing on whether the plaintiff by his service of the notice of February 14, 1952, actually intended a definite, complete, and final rescission. For that reason we allude to it. Whether or not that evidence establishes a waiver on the part of the plaintiff, it does indicate that he was wavering between treating the property as his own and treating it as the property of the defendants. Briefly summarized this evidence shows that while occupying it as his home he rented out to various tenants substantial portions of the house and a portion of the garage and received approximately $1,100 in rent which he retained; that part of this rental was received before and part of it received after the service of the attempted notice of rescission. After service of the notice of rescission he rented to new tenants. In December of 1951 the plaintiff installed a gas burner in the basement and a sink on the third floor. Those

were portions of the house that were being rented out. The plaintiff accepted the return and replacement of various items that he claimed had been taken by Kennelly and demanded the return of others. In January 1952 a real estate man asked the plaintiff to sign an option for the sale of the house, which the plaintiff refused to do. The plaintiff testified:

"I told him to sell and give me my money and give Mr. Kennelly his. * * * I told him to sell it and do with it what he wants; give me my money and give Kennelly his."

These acts on the part of the plaintiff are consistent with confirmation rather than rescission of the contract.

The defendants counterclaimed for foreclosure of the contract for deed. The court made findings of fact and conclusions of law and ordered judgment for the foreclosure of the contract upon which judgment was entered.

The contract provides:

"And in case of default by said party of the second part, in whole or in part, in any or either of the covenants of this agreement to be by him kept and performed, he hereby agrees upon demand of said parties of the first part, quietly and peaceably to surrender to them possession of said premises and every part thereof, it being understood that until such default, said party of the second part (except as hereinafter stated) to have possession of said premises, parties of the first part to have the right in case of default in any of the terms of this contract by party of the second part, to declare the entire purchase price immediately due and payable."

The plaintiff contends that this provision of the contract prescribes an exclusive method of procedure in event of default and that the defendants must proceed to cancel the contract by notice under the provisions of Chapter 32–18 NDRC 1943 providing for the cancellation of land contracts by notice and setting forth the rights of the respective parties when that procedure is followed. The plaintiff asserts that the defendants cannot proceed to foreclose their contract by court action as they sought to do in their counterclaim; that the remedy provided in the contract is exclusive and the defendants have no election. Regardless of what the rule may be elsewhere, this question has been settled adversely to the plaintiff by this court in Johnston Land Co. v. Whipple, 60 N.D. 334, 234 N.W. 59. In paragraph 1 of the syllabus, we said:

"When such contract contains a provision that, upon default in payments to be made by the vendee, the vendor may at its option cancel the contract, such vendor is not required to exercise the option."

Plaintiff next contends that if the court has power to decree a foreclosure of the contract it can only do so pursuant to the foreclosure procedure provided in the case of mortgages and points out that in this case no power of attorney to foreclose has been given.

Chapter 32–19 NDRC 1943, as amended by Chapter 217 SLND 1951, provides for the foreclosure of mortgages and other liens on real estate, including land contracts. With respect to powers of attorney it is provided:

"No power of attorney shall be required to foreclose any equitable mortgage, deed, or instrument other than a mortgage which has been executed or delivered to secure the payment of money or the performance of any other act." Section 32–1902 NDRC 1943.

This provision is broad enough to and it does include the foreclosure of land contracts by action. This sentence is a part of the same section that specifically requires the agent or attorney foreclosing a mortgage to possess a power of attorney authorizing the foreclosure.

The plaintiff also suggests that the procedure followed for the foreclosure of the contract for deed fails to comply with

the statutes in other respects, including the form of the judgment entered. Section 32–1906 NDRC 1943, as amended by Chapter 217 SLND 1951, provides for the contents of the judgment to be entered in an action to foreclose a real estate mortgage or to cancel or foreclose a land contract. Among other things it says that

"The court under no circumstances shall have power to render a deficiency judgment for any sum whatever against the mortgagor or purchaser, or to the successor in interest of either, except as hereinafter provided."

Then follows provision for the bringing of a separate action for a deficiency judgment, if the plaintiff has stated in his complaint that he will later bring a separate action for any deficiency. In this case no deficiency judgment is asked for or indicated in the complaint. The judgment entered provides that the property described in the contract for deed "be sold to satisfy the judgment entered herein." It is clear to us that the judgment will be satisfied by a sale of the property and that no deficiency judgment will remain or can be obtained.

The plaintiff also contends that the contract could not be foreclosed without giving a notice of intention to foreclose, as required by Section 32–1920 NDRC 1943 in foreclosure of mortgages on real estate. The requirement that thirty days' notice be given before the commencement of proceedings to foreclose a mortgage came into our law as Chapter 131 SLND 1919. It clearly applied only to mortgage foreclosures. It has been amended and expanded by a number of subsequent legislative enactments, but in none of them is there an express or implied indication that the requirement applies to foreclosure of other instruments than real estate mortgages. This requirement clearly has no application to the cancellation or foreclosure of contracts for the sale of real estate. The trial court did not err in entering judgment for the foreclosure of the contract for deed.

The plaintiff made a motion for a new trial and urged that the jury was guilty of misconduct in that they disregarded certain instructions of the court with reference to the amount to be awarded to the plaintiff in event they found in his favor. Our determination that the defendants must prevail as a matter of law and that the judgment notwithstanding the verdict must stand renders the specifications of error on the motion for new trial wholly immaterial to a disposition of the case. The judgment and order appealed from are in all respects affirmed.

BURKE, SATHRE, CHRISTIANSON and GRIMSON, JJ., concur.